**STATE of South Dakota, Plaintiff and Appellee,**

v.

**David Earl ANTELOPE, Defendant and Appellant.**

**No. 13156.**

Supreme Court of South Dakota.

Submitted on Briefs Feb. 18, 1981.

Decided April 8, 1981.

Lori S. Wilbur, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Laurence J. Zastrow of Stephens, Quinn, Carr, Tschetter & Buckmaster, Belle Fourche, for defendant and appellant.

MORGAN, Justice.

A Meade County jury found appellant guilty as charged. The State had charged appellant with first-degree rape in violation of SDCL 22–22–1 and 22–22–7.1. The latter statute, however, is the definition of "sexual contact" as used in SDCL 22–22–7 and has nothing to do with this case. The trial court sentenced appellant to serve fifteen years at the South Dakota State Penitentiary in Sioux Falls. Appellant appealed

from the judgment of conviction and sentence.

On September 18, 1979, appellant went to Sturgis, South Dakota, with his father who had an appointment at Fort Meade. While waiting for his father, appellant went into a bar and had a couple of drinks and a beer. He then headed back to Fort Meade. On his way there, he came to Woodle Field. It was shortly after 2:00 in the afternoon. As he approached the track he saw the victim jogging.

After a brief exchange of words with the victim, appellant grabbed her upper arms with both of his hands and pulled her off balance. The victim struggled and tried to get free, but was fatigued from jogging. The victim tried to reason with appellant by explaining to him that it was broad daylight, that someone might see him, and that police regularly patrolled the area. The victim looked for someone to help her, but because of the track's location, saw no one.

Appellant pushed the victim to the ground, held her down with one hand, pulled her shorts and panties down with the other hand, and then had sexual intercourse with her. For fear of being hurt, at no time did the victim cry out for help. Appellant got up, helped the victim up, then headed back to Fort Meade. The victim began jogging again for a few minutes to give appellant time to leave the area so that she could reach her car without having to confront him again. She went to her car and drove around for about ten minutes to consider the consequences of reporting the incident to the police. She decided to report what happened and did so.

The State had originally charged appellant with kidnapping and rape, but the kidnapping charge was dismissed after the preliminary hearing on September 28, 1979. At that time appellant was represented by counsel hired by appellant's father. Prior to that, appellant had been represented by court-appointed counsel.

On April 15, 1980, appellant was tried before a Meade County jury, which found him guilty. On May 14, 1980, the trial court sentenced appellant to serve fifteen years at the state penitentiary, with credit for time served while awaiting disposition of the case.

■ Appellant first alleges that the evidence was insufficient to support his conviction for rape. He has never claimed that the sexual intercourse act did not take place. He contends, however, that the victim consented to the act for such reasons as she did not try to resist, she was pleasant to him before and after the act occurred, she did not cry out for help at any point, she resumed jogging after the act, and she did not immediately report the incident. Appellant claims that he did not rape the victim since there was no force or coercion as alleged in the information.

In determining whether there is substantial evidence to support a conviction, this court must accept the evidence and favorable inferences which may be drawn therefrom in support of the verdict. The verdict will not be set aside if the evidence and the reasonable inferences drawn therefrom sustain a rational theory of guilt. It is not our function to resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence.

*State v. Moves Camp*, 286 N.W.2d 333, 336 (S.D.1979) (citations omitted). The question of consent was one for the jury to determine, and there is sufficient evidence in the record to support the jury's verdict of rape, and therefore no consent.

■ Appellant next contends that the trial court's instructions failed to properly state the law of consent. He alleges that the trial court shifted the burden of proof onto him as far as consent is concerned when it gave Jury Instruction No. 9A, which read as follows:

In order to find consent to be a defense to the charge of rape, there must be no force, coercion or threat by the defendant.

If you should find from all of the evidence a reasonable doubt that the victim consented to the sexual intercourse by the defendant, then you must acquit him of said charge.

Appellant argues that Jury Instruction No. 9A led the jury to believe that he had to prove consent, rather than that the State had to prove his guilt beyond a reasonable doubt.

In *State v. Miller*, 248 N.W.2d 56, 59 (S.D.1976) (citations omitted), this court said that "[v]iewed as a whole, the value of these instructions in clarifying the situation clearly outweighed any prejudice." That seems to be the situation in the present case. Although Jury Instruction No. 9A is rather unorthodox, it must be read in conjunction with the other jury instructions, in particular Jury Instruction No. 11, which read, in pertinent part:

> The defendant has not, through this stipulation [that the act took place], admitted to the use of any force or coercion in accomplishing this act of sexual penetration, and, therefore, you are instructed that the State of South Dakota must prove that element of the charge beyond a reasonable doubt.

In viewing the instructions as a whole, we find that they adequately covered the law without prejudicing appellant.

■ Appellant's third contention is that the trial court's sentence of fifteen years at the state penitentiary constitutes "cruel and unusual punishment."

> Generally, the state and federal constitutional provisions barring cruel and unusual punishments refer to the character, such as barbaric penalties involving physical torture, rather than the duration of punishment. Although punishment by imprisonment is not per se cruel and unusual it may be constitutionally offensive when the duration of the sentence prescribed is so excessive or disproportionate to the crime committed as to shock "the conscience and reason of men generally."

> ... Both sentences are well below the maximum punishment permitted.

> ... Viewing the penalty prescribed according to modern concepts it cannot be considered as cruel or unusual. Certainly, the sentences imposed or prescribed are not so excessive as to shock the general conscience.

*State v. Bad Heart Bull*, 257 N.W.2d 715, 720 (S.D.1977) (citations omitted).

> This Court has stated that a sentence within statutory limits is not reviewable on appeal. We have also stated, however, that a sentence may be constitutionally offensive if its duration is so excessive as to shock the conscience.

> Upon review of the facts of this case, we hold that appellant's sentence, while severe, is not so cruel and unusual as to shock the conscience of the Court.

*State v. Curtis*, 298 N.W.2d 807, 811 (S.D. 1980) (citations omitted). The appellant in *Curtis* received the maximum sentence statutorily allowed for both convictions (one attempted murder, the other kidnapping), even though he had no prior convictions.

In this case, appellant has had prior convictions, and in fact was on felony probation for assault at the time of the present incident. The maximum prison sentence that he could have received was twenty-five years (Class 2 felony), but he received only fifteen years. The sentence was definitely within the statutory maximum, and in light of the circumstances of the case and appellant's criminal record, fifteen years does not seem to be excessive, let alone "shocking to the conscience."

■ Appellant next alleges that the trial court erred in failing to give his proposed lesser included offense instruction on simple assault.

"[I]t is the evidence developed at trial that governs the matter of the instructions to be given ...." *State v. Watson*, 264 N.W.2d 519, 521 (S.D.1978). In this case appellant admitted that the act occurred, so there is no doubt that there was penetra-

tion. Under the facts of this case, either a rape occurred, or it did not. The only question was whether the victim had consented. Even if simple assault could be viewed as a lesser included offense of rape, and we do not hold that it is, the evidence would not warrant such an instruction since there was penetration.

■ Appellant's final contention is that he was deprived of effective assistance of counsel.* He bases this claim on the following:

1) At no time did his court appointed counsel withdraw, and he was unaware that he did not have to accept counsel hired by his father; and

2) His trial counsel failed to object to certain instructions and to propose others.

Appellant does not suggest how he was prejudiced by the failure of his court-appointed counsel to formally withdraw. In fact, the appointed counsel never appeared, inasmuch as appellant's father had retained counsel to represent him. Both counsel involved are experienced trial attorneys; in fact, the privately retained counsel has considerably more time and experience in practice than the court-appointed counsel. We are not willing to say at this time that appellant actually had a choice; that is to say, when a parent is willing to retain counsel on behalf of an indigent son or daughter, may the indigent elect to require the taxpayers of the county to provide court-appointed counsel instead? Because we do not have to reach that issue, we leave it for a case where it is presented, better briefed, and argued.

With respect to the criticism of counsel's trial tactics, this court recently reviewed the issue of ineffective assistance of counsel and reversed and remanded a case on that basis. *State v. McBride,* 296 N.W.2d 551 (S.D.1980). We find nothing in the record of this case to lead us to conclude that appellant was denied effective assistance of

* Counsel on appeal did not represent appellant at the trial.

counsel for the reasons he states, or for any other reason.

We accordingly affirm.

All the Justices concur.

