**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Arthur FAEHNRICH, Defendant and Appellant.**

**No. 14476.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 12, 1984.

Decided Dec. 19, 1984.

Mark A. Moreno, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Rita Duenwald Haverly of Minnehaha County Public Defender's Office, Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

This is a criminal appeal from a judgment of conviction for first-degree rape. We affirm.

Cynthia McConniel and appellant Arthur Faehnrich, who were acquaintances, met outside of a Sioux Falls tavern, after closing, the morning of August 19, 1983. McConniel was having an argument with an individual in the parking lot and requested appellant stay with her in case the argument should get out of hand. (McConniel and appellant had not been together at the tavern prior to this.)

Eventually, the parking lot cleared out, with McConniel and appellant remaining. McConniel testified that appellant told her he was staying at the Flying B Ranch. She offered to give him a ride home. It was approximately 3:00 a.m. Upon arriving at the ranch and finding it abandoned, she claims she became angry. On cross-examination, however, McConniel admitted having previous knowledge that the ranch was abandoned and admitted having been at the sale when property from the ranch was sold. She does not remember how she got out of her car, asserting she would not have done so voluntarily because of a fear of mice, rats, and the dark. Appellant must have pushed her, she contends. Though she does not remember, her shoes, jeans, and underwear must have come off

in the process; she forcefully maintains that she did not take them off. McConniel testified that she began to run from appellant, but tripped on something in the road. She claims to have been hit by appellant, though her memory as to this is hazy. McConniel maintains appellant covered her mouth to stifle her screams, held her hands, and forced her to have intercourse on the gravel road.

Appellant testified that at the tavern parking lot, he asked McConniel if she wanted to go to the ranch and "fool around." McConniel agreed, he contends. At the ranch, appellant claims, they proceeded to partially remove their clothing in the car. They then left the car and engaged in intercourse on the road. Appellant insists that McConniel was a willing participant at all times. However, he did make a tape-recorded statement to police after his arrest that she alternated yes and no while they were in the car at the ranch and that she did begin to scream irrationally, whereupon he placed his hand over her mouth.

Both parties consumed several mixed drinks containing alcohol that evening and both admitted to taking two hits of marijuana.

Appellant was indicted for first-degree rape. Suffice it to say, appellant and McConniel presented different versions of what transpired after the two left the parking area by the tavern, but the jury chose to believe that McConniel was forcibly raped. A verdict of guilty was returned. Appellant was sentenced to twelve years incarceration at the South Dakota State Penitentiary. Four issues are raised on this appeal and separately treated below.

DECISION

I.

WERE APPELLANT'S INCRIMINATING STATEMENTS, GIVEN DURING CUSTODIAL INTERROGATION, VOLUNTARY OR BY USE OF IMPLIED PROMISES OR DECEPTION?

On August 19, 1983, appellant was arrested and taken to the Public Safety Build-

ing, Sioux Falls, where he was questioned by two police officers. The trial court found as a fact that prior to any questioning, appellant was advised of his constitutional rights per the *Miranda* decision, and waived and understood his rights thereunder.

After relating his version of the events in question (two versions), it was suggested to appellant by the officers that his statement of the facts be tape recorded. The officers indicated this would be to appellant's benefit, as he would then be assured that nothing would be added to his statement. Appellant asked what the officers intended to use the tape for and was told that only he, the officers, and the court would have access to the tape. A final version of the rape encounter was then expressed by appellant and tape recorded. This final tape recording, appellant urges, was therefore obtained by deception.

■ Appellant further contends that but for this assurance he would not have consented to having his statement taped. He urges that the officers' promise induced the making of the recording, and thus the statement contained therein was not truly voluntary and should have been determined inadmissible as evidence.

To be admissible, a confession must be " 'free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.' " *Brady v. United States,* 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747, 759 (1970) (citation omitted).

When a confession or an incriminating statement allegedly made by the accused is offered by the prosecution and objected to, the state has the burden of proving beyond a reasonable doubt the same was freely and voluntarily made. The trial judge has the responsibility for making a decision on whether the state has met its burden of proof, in view of the totality of the circumstances. If the trial court finds the confession was voluntary beyond a reasonable doubt, such finding is binding upon this court unless it is clearly erroneous.

*State v. Lyons,* 269 N.W.2d 124, 126 (S.D. 1978) (citations omitted); *State v. Caffrey,* 332 N.W.2d 269 (S.D.1983).

The findings of the trial court are not clearly erroneous in light of the entire record, as they support the trial court's Conclusion # 4 that appellant's statements were made voluntarily beyond a reasonable doubt. As specified in those findings, the record establishes that at no time did appellant request an attorney nor that questioning stop, appellant was not threatened in any way, he was not promised there would be no prosecution, nor was he promised his statements would not be used against him.

The officers' statement as to who would have access to the tape was made solely in response to appellant's question of what the tape would be used for. Appellant had already made his statement to the officers, which negates any implication the statement itself was induced by other factors.

## II.

WAS IT REVERSIBLE ERROR TO ALLOW THE JURY TO READ WRITTEN TRANSCRIPTS WHILE LISTENING TO THE TAPE RECORDING OF APPELLANT'S STATEMENTS?

After appellant's statement had been recorded, the officers had the statement transcribed by a secretary at the Detective Bureau. The typed transcription was used at trial as an accompaniment to the tape. Jurors were allowed to read the typed pages while listening to the recording. The trial court admonished the jury that the transcription was solely to aid in listening; that it was not evidence. The trial court stated that the only evidence was on the recording and that any deviations the typed material contained were to be ignored in favor of the recording. The transcripts were then collected immediately. They were not admitted into evidence and were not taken into the jury room.

Appellant claims error in allowing this typed transcript to be read by the jury because of several inaccuracies in the transcripts (some minor words were apparently misunderstood by the transcriber), the tape was clear and audible, and reading the statements while listening to them would place undue emphasis on their making.

Appellant cites an annotation, 58 A.L.R.3d 598 (1974), in discussing the status of the law with regard to use of transcriptions of recorded material. However, the cases set forth in that work deal primarily with situations where the transcriptions are 1) placed in evidence 2) in lieu of the recording itself. That is not the situation here.

In *United States v. Hall*, 342 F.2d 849, 853 (4th Cir.1965), use of a transcript was considered to have much the same or similar effect "to that which any photograph, drawing, or mechanical model has when used by a witness to amplify his testimony." Therefore, its use was not error.

The Eighth Circuit has held that "[t]he use of typed transcripts as visual aids to the jury in listening to the playback of the recorded communications is a matter within the sound discretion of the trial judge." *United States v. John*, 508 F.2d 1134, 1141 (8th Cir.1975). The following factors indicated no abuse of discretion in that case.

In the exercise of his discretion, the judge below reviewed the transcripts and found that they were prepared with care and accurately reflected the recorded communications. He also determined that the transcripts were necessary to enable the jury to intelligently follow the recorded conversations which contained gambling language unfamiliar to the jurors. Before distributing the transcripts, the court carefully instructed the jury on their limited use. It directed the jury to use the transcripts only as aids in listening to the recordings and to base its verdict upon what was heard and not upon what was read. Further, the jurors were directed to listen carefully to the declarant's manner and emphasis of speech so as to understand the meaning

of what was said. Finally, the transcripts were not made available to the jury during its deliberation. We cannot say that this careful and considered use of the typed transcripts was an abuse of discretion.

*Id.* The trial court herein followed essentially the same procedures. We do not find such to be an abuse of discretion.

## III.

DID THE TRIAL COURT COMMIT REVERSIBLE ERROR IN NOT INSTRUCTING THE JURY ON MISTAKE OF FACT REGARDING CONSENT TO INTERCOURSE?

The trial court refused appellant's Instruction # 1 which read:

It is a defense to a charge of forcible rape that the Defendant entertained a reasonable and good faith belief that the female person voluntarily consented to engage in sexual intercourse. If from all the evidence you have a reasonable doubt whether the Defendant reasonably and in good faith believed she voluntarily consented to engage in sexual intercourse, you must give the Defendant the benefit of that doubt and acquit him of said charge.

The following instruction was given in its stead:

With regard to element number 3 of Instruction number 10, you are instructed that the State must prove beyond a reasonable doubt that the sex act, if any, was accomplished through the use of force, coercion, or threats of immediate and great bodily harm against Cynthia McConniel, and that she did not consent to the sex act.

The consent, if any, need not be expressed verbally, but may be implied from the facts and circumstances shown by the evidence.

However, all of the circumstances surrounding the commission of the act may be considered in determining whether the act was done through the use of force, coercion, or threats of immediate and

great bodily harm or with the consent of the other person.

Appellant contends it was reversible error not to grant the above "mistake of fact" instruction.[1] We disagree.

In *State v. Havens*, 264 N.W.2d 918 (S.D.1978), this Court held that lack of consent is the gravamen of rape. We said in *Havens* that consent may be a defense where there is evidence offered and received that the victim did indeed consent; however, that evidence would also have to utterly negate any element of force, coercion, or threat.

Although appellant testified that he believed McConniel had consented to engage in sexual intercourse, there was substantial evidence adduced negating a reasonable belief. The record reflects that appellant placed his hand over McConniel's mouth during the encounter to prevent her screaming and yelling, an act to which he freely admitted. Moreover, the record also reflects McConniel suffered cuts, abrasions, and other injuries about her person, particularly to her lower back. There was hemorrhaging in the blood vessels of her left eye after the rape encounter. These facts and circumstances lend little credence to appellant's claim in his mistaken belief.

Appellant is entitled only to those instructions which find clear support in the evidence. *State v. Grey Owl*, 295 N.W.2d 748 (S.D.1980). In a forcible rape case, a defendant is not entitled to any consent instruction where the evidence of guilt or lack of consent is overwhelming. *Havens*. The same is true of a mistake of fact instruction regarding consent. *See State v. Williams*, 235 Kan. 485, 681 P.2d 660

(1984); *State v. Lint*, 657 S.W.2d 722 (Mo. App.1983); *Green v. State*, 611 P.2d 262 (Okla.Crim.App.1980).

The evidence in this record simply does not support a mistake of fact instruction.

## IV.

### WAS THERE SUFFICIENT EVIDENCE TO SUSTAIN APPELLANT'S CONVICTION?

Appellant's final contention is that there was insufficient evidence to convict him of rape pursuant to SDCL 22–22–1(1).[2]

In determining the sufficiency of the evidence on appeal, the question presented is whether or not there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. In making such a determination, this Court will accept that evidence, and the most favorable inferences that can be fairly drawn therefrom, which will support the verdict.

*State v. Phinney*, 348 N.W.2d 466, 471 (S.D.1984). The verdict will not be set aside if the evidence and the reasonable inferences therefrom sustain a rational theory of guilt. *State v. Herrald*, 269 N.W.2d 776 (S.D.1978).

The most substantial evidence with regard to the alleged rape consisted of the conflicting testimony of the victim, McConniel, and appellant. Since it is the jury's function, and not this Court's, to resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence, we must give them every consideration in determining the sufficiency of the evidence as to the conviction for rape.

---

1. The defense of "mistake of fact" is recognized in South Dakota per SDCL 22–3–1(4), which provides:

 Any person is capable of committing a crime, except those belonging to the following classes:

 \* \* \* \*

 (4) Persons who committed the act or made the omission charged under an ignorance or mistake of fact which disproves any criminal intent, but ignorance of the law does not excuse a person from punishment for its violation[.]

2. SDCL 22–22–1(1) provides:

 Rape is an act of sexual penetration accomplished with any person other than the actor's spouse under any one or more of the following circumstances:

 (1) Through the use of force, coercion or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution[.]

*State v. Minkel,* 89 S.D. 144, 230 N.W.2d 233 (1975). In so doing, it appears that the conviction must be upheld.

The act of intercourse is not disputed. McConniel testified she must have been pushed from her car, that her clothing was removed involuntarily, that she was chased, that she fell as a result of falling on some uneven object, that appellant hit her on the face, and that he covered her mouth with his hand to prevent her from screaming. McConniel then testified that while covering her mouth, appellant held her hands with his free hand and forced her to have intercourse against her will. McConniel did have cuts and scrapes on her chin and lower back and was found to be in a generally dirty and disheveled condition. There were ruptured blood vessels in her left eye. (Appellant, on the other hand, testified she did not have a single cut or scratch on her when she dropped him off.) If McConniel's evidence is to be believed, which it apparently was by the jury, it certainly is sufficient to sustain a conviction under SDCL 22-22-1(1), and we should not reverse.

Affirmed.

All the Justices concur.

WUEST, Circuit Judge, Acting as Supreme Court Justice, participating.