**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Don B. WOODFORK, Defendant and Appellant.**

No. 16457.

Supreme Court of South Dakota.

Argued Oct. 18, 1989.

Decided April 11, 1990.

Brian L. Radke, Asst. Atty. Gen., Roger A. Tellinghuisen, Atty. Gen. (on brief), Pierre, for plaintiff and appellee.

Shawn Jensen Pahlke, Pennington County Public Defender, Rapid City, for defendant and appellant.

WUEST, Chief Justice.

Don B. Woodfork (Woodfork) appeals from a judgment of conviction for first degree rape. We affirm.

On the evening of April 18, 1988, the victim of the rape (victim) went with friends to the Reunion Bar in Rapid City. There she met Woodfork with a man named Ed Sapp (Sapp). Prior to this evening, the victim had dated Sapp. The victim approached Sapp and began visiting with him. At some point during the evening the victim's friends left the Reunion Bar. Sapp and the victim then decided they would go to Ellsworth Air Force Base to get Sapp's car. Sapp asked Woodfork for a ride to his car and Woodfork agreed. Shortly thereafter, Woodfork, accompanied by a woman named Margretta Kellum (Kellum), left the Reunion Bar with Sapp and the victim.

The victim, Sapp, Woodfork and Kellum did not go directly to the Air Force Base. Instead, they attended a party. Before attending this party, the four stopped at a convenience store where the victim purchased some cigarettes and shoplifted a pack of condoms at the request of Sapp. After attending the party, the four went to Kellum's house. Time passed and the victim eventually decided to spend the night at Kellum's house. Woodfork and Kellum went up to the second floor of the house, and the victim undressed and went to bed. Shortly thereafter, the victim began to worry about staying the night at Kellum's because she had to work the next morning. She then got out of bed, dressed, and attempted to find a ride home. Sapp and Woodfork offered to give the victim a ride home and she accepted.

Woodfork, who was driving the car, did not take the victim to her home, but instead went to Canyon Lake Park. According to the victim, Woodfork stopped the car at the park and pulled her out of the car. Woodfork then struck the victim and led her to a picnic shelter where he directed the victim to remove her clothing. The victim refused and Woodfork struck her again, giving her a bloody nose. Woodfork then removed the victim's clothing. At that time, Woodfork and Sapp began to search through the victim's clothing. The victim tried to escape at that time but she was tackled by Woodfork not far from the shelter. Woodfork then took the victim back to the shelter. According to the victim, Woodfork forced himself upon her and had intercourse with her.

After having intercourse with the victim, Woodfork began to leave when the victim asked him where her clothes were. He told the victim he would retrieve her clothes and instructed her to stay in the shelter. He never returned. Woodfork threw her clothes in a nearby pond and then left the park with Sapp. The victim, unable to find her clothes, went to a nearby convenience store where the police were contacted and an ambulance summoned. On the basis of these facts, Woodfork was later charged and convicted of first degree rape.

Woodfork raises several issues on appeal. We address them separately without listing them. Woodfork first contends the trial court erred in refusing to grant his requested instruction relating to the issue of consent. The record reflects that Woodfork requested that the jury be given the following instruction:

> It is a defense to a charge of rape that the defendant entertained a reasonable and good faith belief that the female person voluntarily consented to engage in sexual intercourse. If from all the evidence you have reasonable doubt whether the defendant reasonably and in good faith believed she voluntarily consented to engage in sexual intercourse you must give the defendant the benefit of the doubt and find him not guilty.

This instruction is similar to the requested instruction denied by the trial court in *State v. Faehnrich*, 359 N.W.2d 895 (S.D. 1984) which we labeled as a "mistake of

fact" instruction in upholding the trial court. Although the trial court refused to give the jury this instruction, the record reflects that the following instruction was given to the jury:

> An act is not a crime when committed or omitted under an ignorance or mistake of fact which disproves any criminal intent. Where a person honestly and reasonably believes certain facts, and acts or fails to act based upon a belief in those facts, which, if true, would not result in the commission of a crime, the person is not guilty.

In addition to this instruction which similarly addresses the issue of "mistake of fact," several other instructions were given to the jury which indicated that Woodfork's guilt must be established beyond a reasonable doubt before the jury could find him guilty of rape. In spite of these instructions which were given to the jury, Woodfork contends that the trial court committed reversible error in refusing to give the jury his requested instruction. We disagree.

 It is well-settled in South Dakota that it is not error for a trial court to refuse to amplify instructions given which substantially cover the principle embodied in the requested instruction. *Wheeldon v. Madison*, 374 N.W.2d 367, 372 (S.D.1985); *Jahnig v. Coisman*, 283 N.W.2d 557, 560 (S.D.1979). It is also well settled that jury instructions must be considered as a whole in determining if error was committed in giving or refusing to give certain instructions. *Runge v. Prairie States Ins. of Sioux Falls*, 393 N.W.2d 538, 540–541 (S.D. 1986); *Wheeldon, supra.* In the present case, we believe the instructions given to the jury, when considered as a whole, substantially cover the principle embodied in Woodfork's requested instruction.

The "mistake of fact" instruction which was given to the jury and the instructions concerning the "reasonable doubt" standard, when read as a whole, indicate that if the jury should entertain a reasonable doubt as to whether Woodfork reasonably believed the victim consented to intercourse, then Woodfork should be found not guilty. This is precisely the principle embodied in Woodfork's requested instruction. It is clear then that Woodfork's requested instruction would only serve to amplify the instructions which were given to the jury. Therefore, we find no error in the trial court's refusal to grant Woodfork's requested instruction.

We next address Woodfork's contention that the trial court erred in excluding evidence relating to the victim's theft of condoms at the convenience store before the rape took place. Prior to trial, the State submitted a *Motion in Limine* arguing the trial court should refuse to allow evidence regarding the shoplifting of the condoms by the victim. The State argued this "shoplifting" evidence was not relevant to any issues relating to the charge of first-degree rape against Woodfork. Woodfork countered by arguing the "shoplifting" evidence was relevant to the victim's character for truthfulness, and hence was admissible under SDCL 19–14–10.[1] Woodfork also argued such evidence was relevant upon the issue of consent, and hence was admissible under SDCL 19–12–5 for the purposes of proving motive, preparation and plan.[2] The trial court, having reviewed the briefs of each party relating to these issues, subsequently granted the State's

---

1. SDCL 19–14–10 provides:

 Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in §§ 19–14–12 to 19–14–16, inclusive, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness

 (1) concerning his character for truthfulness or untruthfulness, or

 (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

2. SDCL 19–12–5 provides:

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Motion in Limine. Although the trial court prohibited Woodfork from submitting evidence to the effect the victim had "shoplifted" the condoms, it did allow Woodfork to present evidence to the effect that she had "obtained" the condoms at the convenience store. On appeal, Woodfork contends that the trial court erred in refusing to allow the "shoplifting" evidence under both SDCL 19–14–10 and SDCL 19–12–5. Woodfork also alleges that the trial court erred in failing to balance the probative value and prejudicial effects of such evidence on the record, as provided in *State v. Eagle Hawk*, 411 N.W.2d 120, 126 (S.D.1987).

We first address Woodfork's argument regarding the admissibility of the "shoplifting" evidence under SDCL 19–14–10. In addressing this argument, we first note that the admission of testimony involves two inquiries: first, whether the evidence is relevant and, second, if relevant, whether the prejudicial effect of the evidence outweighs its probative value. *State v. Reutter*, 374 N.W.2d 617, 625 (S.D.1985); *State v. Rose*, 324 N.W.2d 894, 895 (S.D. 1982). In the present case, the trial court concluded the "shoplifting" evidence was not relevant to the victim's character for truthfulness or untruthfulness. Having reached this conclusion, there was no need for the trial court to proceed to the next step of balancing the probative value of such evidence against its prejudicial effect. Therefore, we do not believe the trial court erred here in failing to conduct an on-the-record balancing of the probative value and prejudicial effects of the "shoplifting" evidence.

This leaves us with the question of whether the trial court abused its discretion in ruling the "shoplifting" incident was not relevant to the victim's character for truthfulness or untruthfulness, and was therefore inadmissible. We have previously stated that before we will disturb an evidentiary ruling, it must be determined that an abuse of discretion has occurred. *State v. Bartlett*, 411 N.W.2d 411, 414 (S.D.1987). An abuse of discretion "refers to a discretion exercised to an end or pur-

pose not justified by, and clearly against reason and evidence." *State v. Bartlett, supra; Gross v. Gross*, 355 N.W.2d 4, 7 (S.D.1984). The issue of whether shoplifting or petty larceny is relevant to a person's character for truthfulness or untruthfulness is certainly debatable. A number of courts have held that such evidence is not indicative of a person's character for truthfulness or untruthfulness, and hence should not be allowed at trial for the purpose of attacking the credibility of a witness. *See generally, State of Nebraska v. Williams*, 212 Neb. 860, 326 N.W.2d 678, 679 (1982); *State of Washington v. Burton*, 101 Wash.2d 1, 676 P.2d 975, 982 (1984); *State of Oregon v. Reitz*, 75 Or. App. 82, 705 P.2d 762, 764 (1985). Although we do not adopt this view as a general rule, we believe these authorities at least suggest that the trial court's ruling was not clearly against reason and evidence. Additionally, we believe the circumstances under which this shoplifting incident occurred also suggest the trial court's ruling with respect to this issue was not clearly against reason and evidence. The record clearly reflects this shoplifting incident took place late at night, after the victim had been drinking liquor for several hours. Shoplifting under these circumstances indicates even less about a person's character for truthfulness than it otherwise might under more normal circumstances. Considering these facts and the above-mentioned authorities, we cannot conclude the trial court abused its discretion in refusing to admit the shoplifting evidence under SDCL 19–14–10.

We next address Woodfork's argument that the shoplifting evidence should have been admitted by the trial court under SDCL 19–12–5 as it was probative of motive, preparation and plan. With respect to this issue, the record shows the trial court refused to admit the "shoplifting" evidence under SDCL 19–12–5 because it was not relevant to any issues relating to the charge of first-degree rape brought against Woodfork.[3] Having reviewed the record in

3. Again, as the record indicates the trial court

concluded that such evidence was not relevant,

this case, we agree the shoplifting evidence was not relevant to any material issues in this case and thus we hold the trial court did not abuse its discretion in refusing to admit such evidence under SDCL 19–12–5. In the present case, it is undisputed that the victim obtained the condoms at the request of *Sapp*, not Woodfork. Furthermore, there was never any statement or suggestion that the victim was to obtain the condoms so that both Sapp and Woodfork could engage in sexual intercourse with her. The fact the victim already had one condom on her possession prior to the shoplifting incident bears little significance since Sapp apparently had none and wanted some. Moreover, the victim may have desired to engage in sexual intercourse with Sapp more than once. From these facts, it is clear the victim shoplifted the condoms for the purposes of having sexual intercourse with Sapp, not Woodfork. It is clear, therefore, that the shoplifting evidence bears no relevance to the issue of consent in this case.[4] Hence, we conclude the trial court did not abuse its discretion in denying admission of the shoplifting evidence under SDCL 19–12–5.

■ Woodfork has also asserted that the trial court erred in refusing to instruct the jury on simple assault as a lesser included offense of first degree rape. We find no merit in this assertion. This issue was presented to this court in *State v. Antelope*, 304 N.W.2d 115 (S.D.1981). In *Antelope*, we stated:

'[I]t is the evidence developed at trial that governs the matter of the instructions to be given....' *State v. Watson*, 264 N.W.2d 519, 521 (S.D.1978). In this case appellant admitted that the act occurred, so there is no doubt that there

was penetration. Under the facts of this case, either a rape occurred, or it did not. The only question was whether the victim had consented. Even if simple assault could be viewed as a lesser included offense of rape, and we do not hold that it is, the evidence would not warrant such an instruction since there was penetration.

*Antelope, supra* at 117–118. Similar to the facts in *Antelope*, Woodfork also admitted that the act occurred, and there was no doubt that there was penetration. Based upon the facts of this case then, either a rape occurred, or it did not. Therefore, in this case as well as in *Antelope*, even if simple assault could be viewed as a lesser included offense of rape (again, we do not hold that it is), the evidence would not warrant such an instruction as penetration did occur.

■ Woodfork next contends that the trial court erred in refusing to allow him to cross examine the victim about her prior sexual encounters with Sapp. We disagree. As a general rule, the admission of evidence concerning a rape victim's prior sexual conduct is precluded by SDCL 23A–22–15.[5] This statute, like rape shield laws in other jurisdictions, represents a legislative determination that in most instances, such evidence is not relevant and highly prejudicial to the victim. *State v. Blalack*, 434 N.W.2d 55, 57 (S.D.1988) (citations omitted). Evidence of a rape victim's prior sexual encounters may be admitted if the trial court finds that it is relevant and material to a fact at issue in the case. *Blalack, supra.* This determination is entrusted to the sound discretion of the trial court. *Id.* We will not interfere with the

---

there was no need for the trial court to conduct an on the record balancing analysis of the probative value and prejudicial effects of such evidence.

4. Even if this evidence was to be considered relevant upon the issue of consent, the "shoplifting" evidence would still be irrelevant under SDCL 19–12–5 since the *manner* in which the victim obtained the condoms is insignificant for the purpose of proving motive, preparation or plan.

5. SDCL 23A–22–15 provides:

In prosecutions for rape, evidence of specific instances of a victim's prior sexual conduct shall not be admitted nor reference made thereto before the jury or jury panel, except as provided in this section. Whenever a party proposes to offer evidence concerning a victim's prior sexual conduct, the court shall first conduct a hearing in the absence of the jury and the public to consider and rule upon the relevancy and materiality of the evidence.

trial court's determination unless an abuse of discretion is clearly demonstrated. *Id.*

In the present case, the trial court concluded that the evidence concerning the victim's prior sexual encounters with Sapp was not relevant or material to any fact at issue in the case. Therefore, cross-examination of the victim regarding that matter was prohibited.[6] Woodfork now contends that the trial court abused its discretion in prohibiting such cross-examination because he claims that the evidence of the victim's prior sexual encounters with Sapp was relevant to the issue of consent. We find no merit in this argument. The record in this case is devoid of any substantial evidence which would tend to suggest that because the victim had consensual sexual intercourse with Sapp, then she would be inclined to have consensual sexual intercourse with Woodfork. The victim's prior sexual encounters with Sapp suggest little more than her willingness to engage in sexual intercourse with Sapp. It bears no relevance to the issue of whether the victim may have consented to sexual intercourse with Woodfork. As a result, we cannot conclude that the trial court abused its discretion in refusing to allow Woodfork to cross-examine the victim regarding her prior sexual conduct with Sapp.

■ We next address Woodfork's contention that the trial court abused its discretion in allowing the jury to view photographs of the victim taken shortly after the rape. In *State v. Swallow*, 350 N.W.2d 606 (1984), we stated the following:

> Photographs, slides and X-rays are admissible when they accurately portray anything which it is competent for a witness to describe in his own words, or where they are helpful as an aid to a verbal description of objects or conditions and relevant to some material issue.

*Swallow, supra* at 610. In addition to this, we have also stated that the "trial court, in determining whether pictures or photographs should be admitted, must weigh the probative value of the photographs in resolving a material issue as against the danger of prejudice to the appellant through needless arousals of the passions of the jurors." *State v. Kane*, 266 N.W.2d 552, 558 (S.D.1978). Having applied these rules to the present case, we conclude that the trial court did not abuse its discretion in allowing the jury to view the photographs in question.

The record clearly reflects that the trial court considered the probative value of these photographs together with the prejudicial effects that they may have. Having given due consideration to these matters, the trial court then concluded that these photographs could be displayed to the jury. We do not believe the trial court abused its discretion in reaching this conclusion. Both the victim and the doctor who treated her testified that the photographs were accurate depictions of the victim's appearance shortly after the rape. In fact, the doctor stated that the victim's appearance after the rape was worse than what the photographs depicted. Furthermore, these photographs were clearly relevant to the central issue of force in this case. We must conclude, therefore, that the trial court committed no error in allowing the jury to view the photographs in question.

Woodfork finally argues that the cumulative effect of all these alleged errors effectively deprived him of his right to a fair trial. As we have determined that the trial court committed no errors in this case, we reject this argument presented by Woodfork. It is clear then that Woodfork was not deprived of his right to a fair trial in any manner.

Judgment is affirmed.

MORGAN and MILLER, JJ., concur.

HENDERSON and SABERS, JJ., dissent.

HENDERSON, Justice (dissenting).

I respectfully dissent. Woodfork did not receive a fair trial. He had an "inherent

---

6. In addressing this issue, we believe it is worthy to note that the evidence of the victim's prior sexual encounters with Sapp was ultimately brought to the attention of the jury through Woodfork's direct examination of Sapp towards the end of the trial.

right" to "defend his liberty." Art. VI, Bill of Rights § 1, S.D. Const.* He could not defend his liberty because (1) he advanced the defense of consent and the trial judge refused—in several ways—to permit him to effectively prove consent; (2) the trial judge would not allow testimony concerning the theft of condoms; (3) the trial judge did not allow cross-examination about statements the victim made concerning prior sex acts with appellant and Sapp; (4) the jury was not specifically instructed that "consent" created a defense to first degree rape. Mistakenly, and with belabored judicial effort to keep the critical facts from the jury, was this case tried. The criminally accused's right to proffer a defense is fundamental. *See Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297, 312 (1973); *United States v. Garner*, 581 F.2d 481, 488 (5th Cir.1978); *United States v. Ballesteros–Acuna*, 527 F.2d 928, 930 (9th Cir.1975); and *United States v. Thomas*, 488 F.2d 334, 335 (6th Cir.1973). This constitutional right to present evidence, and thus a defense, is grounded in the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, *Chambers*, and in S.D. Const. art. VI, §§ 2 and 7. Thus, the accused "is entitled to have the jury consider any theory of the defense which is supported by law and which has some foundation in the evidence, however tenuous. *Tatum v. United States*, 190 F.2d 612, 617, 88 U.S.App.D.C. 386 (D.C.Cir.1951); *United States v. Phillips*, 217 F.2d 435, 442–443 (7th Cir.1954)." *United States v. Grimes*, 413 F.2d 1376, 1378 (7th Cir.1969). *See also, United States v. Chatham*, 568 F.2d 445, 450 (5th Cir.1978). In *State v. Dokken*, 385 N.W.2d 493, 504 (S.D.1986), we reversed a conviction of first degree murder and ordered a new trial because it was "overwhelmingly clear that Dokken's substantial rights were so violated that he did not receive a fair trial." Dokken, in his second trial, was acquitted. I am convinced that the "cumulative effect" of the

improper rulings deprived Woodfork of his right to a fair trial. *Dokken*, at 494.

Victim's acts of stealing condoms, in preparation to go out with a man (or men) to have sex and then cry rape (after intercourse) is a combination of contradictory or incongruous acts. The jury should have been permitted to know that she would steal condoms to fulfill her plans to engage in sexual acts. An offer of proof to hear this evidence was denied by the trial judge. This evidence had probative, material value. It was error to exclude it. This evidence (stealing condoms) was relevant to her credibility. Theft, does it not, reflects upon honesty/dishonesty? Dishonesty, does it not, reflects upon credibility? Credibility, does it not, reflects upon the jury's overall assessment of the witness' testimony? Under SDCL 19–14–10, it is the general rule that specific instances of the conduct of a witness—to attack his or her credibility—may not be established by extrinsic evidence. There are two exceptions, however. One of these relates to his/her character for truthfulness or untruthfulness. Example before us: The complaining witness' specific conduct of stealing condoms to go out and have sex bears on her credibility, her direct credibility that she was forcibly raped. In SDCL 19–12–1 we find: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Even if evidence is relevant, a trial judge may, by law, exclude relevant evidence. Such power is granted unto him by SDCL 19–12–3. If the evidence is prejudicial, misleading or cumulative, the trial judge may exclude the evidence. Before us, the evidence was not violative of this state statute. Therefore, it should not have been excluded. Furthermore, under SDCL 19–12–3 "other crime evidence" has been held admissible by this Court. *State v. Holland*, 346 N.W.2d 302 (S.D.1984); *State v. Rose*, 324 N.W.2d 894 (S.D.1982). "Other crime evidence" must

---

* It provides, inter alia: "All men are born equally free and independent, and have certain inherent rights, among which are those enjoying and *defending* life and *liberty*, of acquiring and protecting property and the pursuit of happiness."

meet two tests: (1) Is it relevant? (2) If relevant, does the prejudicial effect of the evidence substantially outweigh its probative value? *State v. Reutter*, 374 N.W.2d 617 (S.D.1985). Granted that this Court has, through decisions, held that "other crime evidence" may be *used by the prosecution* to convict (a) if relevant and (b) its prejudicial effect does not outweigh its probative value, why is it so wrong *to allow the defense* to establish "other crime evidence" which proves up the defense? Both prosecution and the defense—on the battlefield of truth—should have to play by the same set of rules! Impartiality and the equal administration of justice demands that we seek not a result but, rather, apply the law with neutral force; state judges or justices we might be, but chattels of the state, to do its bidding, we are not.

Alleged victim admitted, under oath, to smoking marijuana on the night of the rape. An independent witness provided testimony that the alleged rape victim removed her underpants at her home before leaving (for the nocturnal activities). Bra, too. Victim, at independent witness's home, displayed her pubic area to Woodfork. Victim is white; Woodfork is black. A used condom was found by police at the "rape" site. Woodfork's singular defense was that of consent. Victim testified she voluntarily partied the night in question with Woodfork and his male friend and accepted a ride home. This scenario was not a platonic "stroll in the park" situation. Plato's contemplation of the "universal" and the "ideal" to a close relationship between two persons—where sexual desire was suppressed or sublimated to further a great ideal—did not mentally abound.

Woodfork was entitled to cross-examine his accuser. Woodfork's direct examination of Sapp, at the end of the trial, is not a substitute for cross-examination of the accuser. Cross-examination is a vital tool in the arsenal of a defense lawyer and his client because it is the best method for testing the trustworthiness of testimony. To strip it away is to eliminate the right to defend the accused's liberty. This is another example of why Woodfork was denied a fair trial. Charged with First Degree Rape, he was denied the right to effectively cross-examine the "victim" concerning previous sexual encounters directly relevant to the crime of which he stood accused. U.S. Const. amend. VI; S.D. Const. art. VI, § 7.

Although briefed to this Court, the majority opinion conspicuously avoids treatment of the prejudicial error rule. This is understandable as the Chief Justice of this Court stood alone in *State v. Davis*, 401 N.W.2d 721 (S.D.1987). By swift, literary passage on previous lonesome waters, the author of the majority opinion now sails past a discussion of prejudicial error. As the captain (sole) of this dissent, bottomed on the premise that prejudicial error was committed below, I cannot, conceptually, lay anchor. In *Davis*, I cited fourteen separate cases in this Court, plus made reference to a scholarly article of former Chief Justice Roger Traynor of the California Supreme Court, on "The Riddle on Harmless Error," all regarding harmless error. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), was also cited. I began my *Chapman* recognition in a dissent in *State v. Chief Eagle*, 377 N.W.2d 141 (1985). Again, I point out, as I did in my concurrence-in-result in *Davis*, that an appellate body must determine if the question involves (a) a violation of a state procedural provision (b) a violation of a state constitutional provision or (c) a federal constitutional transgression. Reference is also made to my special concurrence in *State v. Remacle*, 386 N.W.2d 38, 40 (S.D.1986), reflecting that the scope of review cannot go back to *State v. Reddington*, 80 S.D. 390, 125 N.W.2d 58 (1963), as well as its progeny, if a federal constitutional error arises. If a federal constitutional error does arise, the basic tenets of *Chapman* becomes applicable. This, then, triggers that a court must declare a belief that it was harmless beyond a reasonable doubt. Each case must be examined to determine what type of error was committed below. If the conceptual road is not laid out from the beginning (like the Interstate), any appellate body can take the wrong fork, get on the gravel, with destination unknown. The reasonable doubt

hurdle only comes into play when a constitutional violation is apparent. I would adopt the reasonable doubt standard, in this case, because both state and federal constitutional error was committed. Why? Elementary, my dear Watson. The trial judge, by numerous evidentiary errors, absolutely refused to permit Woodfork from defending his liberty by a dogmatic refusal to permit any evidence that the victim consented, thereby precluding a fair trial Art. VI, Bill of Rights, § 1, S.D. Const.; *Chambers*, id.; *Tatum*, id. In *State v. Webb*, 251 N.W.2d 687 (S.D.1977) we held that the harmless error rule should never be used to justify fairness at trial. This Court should stand above the affray of advocacy to prevent the harmless error rule from being an instrument of wrong. Point: The evidentiary errors of the trial court were not harmless. "Absent [the alleged error] ... is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?" I say no. We cannot answer this question yes, because the judge would not permit Woodfork to proffer his defense for the jury to consider. *See, United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1969). Certainly Woodfork had the right to.create a reasonable doubt and the facts of this case are neither speculative nor fantastic about creating a doubt. A jury would not be speculating upon a fantastic defense. Rather, the jury would be deliberating upon the truth of a defense, namely consent. I quote 1A. Wigmore, Evidence § 139, at 1724 (Tillers rev.1983):

> [I]f the evidence [offered by the accused] is in truth calculated to cause the jury to doubt, the court should not attempt to decide for the jury that this doubt is purely speculative and fantastic but should afford the accused every opportunity to create that doubt. A contrary rule is unfair to a really innocent accused.

Academically, can the majority opinion truly use *Faehnrich* as its primary authority for a refusal to give Woodfork's requested instruction on voluntary consent? *There does not appear to be any instruction which explicitly mentions "consent."* In *Faehnrich*, 359 N.W.2d at 900 we ex-

pressed: "In a forcible rape case, a defendant is not entitled to any consent instruction where the evidence of guilt of lack of consent is overwhelming." In *Faehnrich*, by making that statement, we relied on *State v. Havens*, 264 N.W.2d 918 (S.D. 1978). We held in *Havens* that "... consent may be a defense where there is evidence offered and received that the victim did indeed consent; however, that evidence would also have to utterly negate any element of force, coercion or threat." I sincerely submit that the evidence of guilt or lack of consent is not overwhelming in the case before us. Again, the consent defense was stripped from Woodfork in the instructions. Remember the facts, as you judge the merits of this writing, that testimony from an independent witness established that the alleged rape victim removed her underpants and her bra, at the independent witness' home, and displayed her pubic area to the accused. Those facts, plus her stealing condoms that night certainly negates that there is no evidence of guilt or lack of consent which is "overwhelming." *Faehnrich* is totally inapposite.

Justice Sabers, in his dissent, alludes to *Michalek*. Continuing a decade of writing on the prejudicial error rule in this Court, again I wrote specially therein to concur and to also preserve the integrity of my previous position. In said special concurrence, I wrote that *State v. Farley*, 290 N.W.2d 491 (S.D.1980) was the controlling case for that set of facts. Moreover, reaching back to the granddaddy, I cited *State v. Reddington*, 80 S.D. 390, 396, 125 N.W.2d 58, 62 (1963), for the general proposition "There is no definite rule by which to measure prejudicial error and each case must be decided on its own facts." Point: Prejudicial error occurred here.

Therefore, I hereby vote to reverse this conviction of forcible rape and would remand this case for retrial so that Woodfork could fairly present his defense.

SABERS, Justice (dissenting).

I dissent for these five reasons:

1. The trial court committed reversible error when it refused defense testimony that the "victim" shoplifted the package of condoms. To permit the "sanitized" testimony that she merely "obtained" the condoms simply does not cut it.

The defense theory was that the sex acts were consented to, not forced. Defense testimony showed that the victim had sex with Defendant and Ed Sapp on the same night on a prior occasion; that she told Sapp that *they* were *both* "good" the last time and she would like to have sex with *them* again. Sapp further testified that the victim got out of the car by herself and walked with Defendant from the car to the park with their arms around each other.

Whether this defense testimony is true is for the jury to decide, not the trial court and not the appellate court. Therefore, it was reversible error to deny the jury the relevant facts. *State v. Dokken,* 385 N.W.2d 493 (S.D.1986).

Whether the victim wanted to have sex with both Sapp and Defendant so bad that she risked arrest and punishment *by shoplifting* a package of three condoms is highly relevant. This is especially so when one considers that she already possessed one condom. If she only wanted sex with Sapp one condom was probably sufficient. At any rate, it was a jury question and it was reversible error to deny the jury that information. *Dokken, supra.*

2. The victim's admission that she stole condoms is also relevant to her credibility and probative of untruthfulness under SDCL 19–14–10.

3. The state and federal constitutions guarantee the accused in a criminal proceeding the right to confront witnesses against him. U.S. Const. amend. VI; S.D. Const. art. VI, § 7. Despite these constitutional provisions, the trial court refused to allow the defense to cross-examine the victim concerning prior voluntary sexual encounters with Sapp connected to prior voluntary sexual encounters with Defendant and the statements attributed to her that "she enjoyed it last time" and "she wanted both of [them] again."

The majority opinion whitewashes the trial court ruling on the basis of SDCL 23A–22–15 (Rape Shield Law), *State v. Blalack,* 434 N.W.2d 55 (S.D.1988), or because the evidence was "not relevant or material." Certainly, whether she wanted to have sex with "them" again was both relevant and material to the defense that she consented.

SDCL 19–12–1 states that evidence is relevant when it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Whether the victim consented to the sex acts is a fact of consequence to the determination of this action. Evidence that the victim had consented to sex with Defendant in the past makes it more probable than it would be without that evidence that she consented again. Likewise, evidence that the victim had sex with Sapp just prior to having sex with Defendant and that Sapp instructed Defendant to go have sex with the victim makes it more probable than it would be without that evidence that the victim consented to sex with Defendant in the past. The same is true of evidence that the victim told Sapp she thought "both of [them] were good the last time," and she wanted both of them again. Sapp told Woodfork of this conversation. Therefore, evidence of the victim's prior sexual encounters with Sapp is highly relevant, and Woodfork should have been allowed to cross-examine the victim about these matters.

Unfortunately, we have apparently "laid to rest" the following statements from *State v. Wounded Head,* 305 N.W.2d 677, 680 (S.D.1981):

> We recognize that the opportunity to cross-examine any prosecution witness is central to the fundamental right of confrontation and to the conduct of an effective defense. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). However, the "extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court," *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624, 629 (1931), and the

trial court may always limit cross-examination to prevent repetitive and unduly harassing interrogation. *Davis v. Alaska, supra.* That discretion, however, must be exercised "with the utmost caution and solicitude for the defendant's Sixth Amendment rights." *United States v. Houghton,* 554 F.2d 1219, 1225 (1st Cir.1977), *cert. denied,* 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 120 (1977). *The trial court's "latitude in the control of cross-examination ... 'cannot ... justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony.'"* *United States v. Harris,* 501 F.2d 1, 8 (9th Cir.1974), quoting *Gordon v. United States,* 344 U.S. 414, 423, 73 S.Ct. 369, 375, 97 L.Ed. 447, 455 (1953).

(emphasis added). I would revive these statements and reverse and remand for a fair trial in accordance with our state and federal constitutions. Cross-examination is perhaps the most effective means of challenging a witness' credibility, and this case hinges upon the credibility of Defendant and the victim. The muzzle that the trial court placed upon Defendant's cross-examination of the victim denied Defendant his fundamental right to conduct an effective defense.

4. The errors of the trial court constitute "prejudicial error." The correct definition of prejudicial error was stated in *State v. Michalek,* 407 N.W.2d 815, 818–819 (S.D.1987):

> "Prejudicial error" is error which in all probability must have produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it. [*Dokken, supra* at 498]; *State v. Reddington,* 80 S.D. 390, 396, 125 N.W.2d 58, 62 (1963).... SDCL 23A–44–14 defines harmless error as "[a]ny error, defect, irregularity or variance which does not affect substantial rights[.]" The harmless error rule governs even constitutional violations, not requiring the automatic reversal of a conviction, provided the court is able to declare a belief beyond a reasonable doubt that the error was harmless and did not contribute to the verdict obtained.

*State v. Heumiller,* 317 N.W.2d 126, 130 (S.D.1982) *citing Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

In *United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), the Court followed *Chapman* and framed the question a reviewing court must ask as follows:

> Absent [the alleged error] ... is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty?

*Id.* 461 U.S. at 510–511, 103 S.Ct. at 1981, 76 L.Ed.2d at 107.

Absent the errors here, it is not clear *beyond a reasonable doubt* that the jury would have returned a verdict of guilty. We simply cannot say *beyond a reasonable doubt* that absent these errors the jury would have returned the same verdict. Therefore, there is prejudicial error.

5. In fact, the cumulative effect of these errors effectively deprived Woodfork of his right to a fair trial contrary to *Dokken, supra,* and *State v. Rufener,* 392 N.W.2d 424, 431 (S.D.1986) (Sabers, J., dissenting), *on rehearing,* 401 N.W.2d 740 (S.D.1987), because he was denied the opportunity to fully present his theory of the case to the jury. Therefore, we should reverse and remand for a fair trial.