#26212-a-LSW

**2012 S.D. 91**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                      Plaintiff and Appellee,

    v.

ARLEY F. ROACH,                             Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JANINE M. KERN
Judge

* * * *

MARTY J. JACKLEY
Attorney General

MAX A. GORS
Assistant Attorney General
Pierre, South Dakota                        Attorneys for plaintiff
                                            and appellee.


JOHN R. MURPHY
Rapid City, South Dakota                    Attorney for defendant
                                            and appellant.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 27, 2012

OPINION FILED **12/26/12**

#26212

WILBUR, Justice

[¶1.]     Arley Roach was convicted by a jury of second-degree rape.  Roach appeals a number of issues involving hearsay and the denial of a requested jury instruction, a *Batson* challenge, and an objection regarding the State's use of the word "rape" during trial.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

[¶2.]     Roach and H.S. were involved in an intimate, three-year relationship characterized by several break-ups.  The couple frequently reunited through consensual sexual intercourse.

[¶3.]     On the evening of February 6, 2011, H.S. tried to end her relationship with Roach because she had begun a new relationship.  That evening and into the early morning hours of February 7, 2011, the couple exchanged a series of text messages.  Roach sent a text message to H.S. stating that he had finally accepted the fact that H.S. fell out of love with him.  He asked her whether he should leave her alone.  H.S. responded that she did not want him to "bug" her about it.  In response, Roach called H.S. a "fucin whore" "just like [her] mom."  Further, Roach replied "U [know] ur fucin me 2marow right got [any more] condoms i dont believe u used one."  H.S. responded "No arley, we arent [okay] not in the god damm mood rite now stop [okay] gotta go to sleep."  Roach then replied "Oh u can fuc [the] world [though]."  The couple continued to exchange text messages until H.S. turned off her cell phone.

[¶4.]     On the morning of February 7, 2011, Roach entered H.S.'s apartment, crawled into bed with H.S., and tried to have sex with her.  H.S. refused, got up

from the bed, and moved to the couch. Roach continued to try to have sex with her and H.S. continued to refuse. Roach then picked up H.S. and tried to carry her into the bathroom. While Roach was trying to carry her to the bathroom, H.S., in an effort to stop Roach, attempted to grab onto the walls and scraped her thumb on the corner of a doorway. H.S. asked Roach to stop and to put her down. Roach eventually complied and H.S. walked into the bathroom to smoke a cigarette.[1]

[¶5.]    Once in the bathroom, H.S. again tried to end her relationship with Roach. During their conversation, Roach became upset when he saw a hickey on H.S.'s neck. In response to this marking, Roach said that H.S. "c[ould] go fuck the world but [she] can't fuck him." Roach then started to pound his fist into his hand. H.S. became scared that he was going to harm her. Because Roach stood between her and the doorway to the bathroom, H.S. walked to the corner of the bathroom and began to cry. Roach proceeded to undress himself, grabbed a blanket off of a shelf, and placed it on the floor. Roach then grabbed H.S. and pushed her to the floor. While being held down by the weight of Roach, H.S. repeatedly told Roach to stop and that she did not want to have sex with him. H.S. eventually stopped fighting Roach. Roach penetrated H.S., ejaculated, and left the bathroom.

[¶6.]    At this point, H.S.'s roommate, N.R., arrived home from school. In Roach's presence, N.R. asked H.S. what was wrong because H.S. was crying. H.S. did not respond. In an effort to find out more information, N.R. asked H.S. if Roach had forced H.S. to have sex with him. H.S. shook her head affirmatively. Roach

---

1.    H.S. typically smoked cigarettes in the bathroom because the exhaust fan removed the smoke from the apartment.

stated that he had not done anything to H.S. N.R. asked H.S. if Roach had raped her and H.S. responded yes. N.R. called 911.

[¶7.] On March 31, 2011, Roach was indicted for second-degree rape and sexual contact with a person incapable of consenting. The sexual contact charge was later dismissed by the State. In a part two information, Roach was also charged as a habitual offender due to a prior felony conviction.

[¶8.] After a jury trial,[2] Roach was found guilty of second-degree rape and sentenced to fifteen years in prison with five years suspended.

[¶9.] Roach raises five issues in this appeal:

1.   Whether the trial court erred in denying Roach's proposed jury instruction on consent.

2.   Whether H.S.'s statements to sexual assault nurse, Amber Mason, were admissible under SDCL 19-16-8 (Rule 803(4)).

3.   Whether the trial court erred in denying Roach's *Batson* challenge to the State's peremptory strike of prospective juror, C.B.B.

4.   Whether H.S.'s statements to Officer Terviel were admissible under SDCL 19-16-6 (Rule 803(2)).

5.   Whether the trial court abused its discretion in allowing the use of the word "rape" during trial.

## ANALYSIS AND DECISION

[¶10.]   **1.   Whether the trial court erred in denying Roach's proposed jury instruction on consent.**

[¶11.] At trial, Roach based his theory of defense on the tumultuous nature of his relationship with H.S., as well as their method of reconciliation – consensual

---

2.   Appellate counsel did not represent Roach at the trial level.

sexual intercourse. He alleged that it was reasonable for him to believe that H.S. consented to the sexual encounter.

[¶12.] Roach proposed his jury instruction number two that stated, "[i]f the Defendant reasonably believed H.S. consented to the sex act, then no rape occurred." The trial court considered the jury instruction and denied it. Instead, the court gave Roach's third proposed instruction, a "mistake of fact" instruction, similar to the South Dakota Criminal Pattern Jury Instruction 2-8-1[3] and similar to the instruction approved by this Court in *State v. Woodfork*, 454 N.W.2d 332 (S.D. 1990).[4] Roach's proposed instruction three became jury instruction 17. Instruction 17 provided:

---

3. South Dakota Criminal Pattern Jury Instruction 2-8-1 provides:

> An act is not a crime when committed or omitted under an ignorance or mistake of fact which disproves any criminal intent.
> Where a person honestly and reasonably believes certain facts, and acts or fails to act based upon a belief in those facts, which, if true, would not result in the commission of a crime, the person is not guilty.

4. Woodfork was charged with and convicted of first-degree rape. *Woodfork*, 454 N.W.2d at 333. He contended that "the trial court erred in refusing to grant his requested instruction relating to the issue of consent." *Id.* He requested that the jury be instructed with the following instruction:

> It is a defense to a charge of rape that the defendant entertained a reasonable and good faith belief that the female person voluntarily consented to engage in sexual intercourse. If from all the evidence you have reasonable doubt whether the defendant reasonably and in good faith believed she voluntarily consented to engage in sexual intercourse you must give the defendant the benefit of the doubt and find him not guilty.

(continued . . .)

An act is not a crime when committed or omitted under an ignorance or mistake of fact which disproves any criminal intent. Where a person honestly believes certain facts, and acts or fails to act based upon a belief in those fact[s], which, if true, would not result in the commission of a crime, the person is not guilty.[5]

[¶13.]    This Court has previously provided the standard of review for a trial court's instructions to a jury. "A trial court has discretion in the wording and arrangement of its jury instructions, and therefore we generally review a trial court's decision to grant or deny a particular instruction under the abuse of discretion standard." *State v. Klaudt,* 2009 S.D. 71, ¶ 13, 772 N.W.2d 117, 121 (quoting *State v. Cottier*, 2008 S.D. 79, ¶ 7, 755 N.W.2d 120, 125). This Court has also stated, however, that

> [a]n accused must be afforded a meaningful opportunity to present a complete defense. When a defendant's theory is supported by law and . . . has some foundation in the evidence, however tenuous[,] the defendant has a right to present it. Nonetheless, [j]ury instructions are to be considered as a whole, and if the instructions when so read correctly state the law and

_____

(. . . continued)

*Id.* The trial court refused to give this instruction to the jury. *Id.* at 334. The court instead instructed, and this Court ultimately approved, the following mistake of fact instruction:

An act is not a crime when committed or omitted under an ignorance or mistake of fact which disproves any criminal intent. Where a person honestly and reasonably believes certain facts, and acts or fails to act based upon a belief in those facts, which, if true, would not result in the commission of a crime, the person is not guilty.

*Id.*

5.    Unlike South Dakota Criminal Pattern Jury Instruction 2-8-1 and the instruction approved by this Court in *Woodfork*, jury instruction 17 did not contain the words "and reasonably" in the second sentence.

inform the jury, they are sufficient. This is a question of law reviewed de novo.

*Id.* (alterations in original) (internal citations and quotations omitted).

[¶14.] Further, an "[e]rror in refusing a proposed instruction 'is reversible only if it is prejudicial, and the defendant has the burden of proving any prejudice.'" *Id.* ¶ 18 (quoting *State v. Martin*, 2004 S.D. 82, ¶ 21, 683 N.W.2d 399, 406). "This requires a showing that the alleged error, in all probability, produced some effect upon the jury's verdict and was harmful to the substantial rights of the party assigning it." *Id.* (quoting *Martin*, 2004 S.D. 82, ¶ 37, 683 N.W.2d at 411).

[¶15.] Roach argues that the trial court deprived him of his constitutional rights to due process and a fair trial when it refused to instruct the jury on his theory of defense – consent. He further asserts that his second proposed instruction was supported by law and had a foundation in the evidence presented at trial. Roach maintains that he was prejudiced by the court's denial of his second proposed jury instruction because, had the instruction been given to the jury, the verdict would have been different.

[¶16.] The State asserts that the jury was properly instructed because, when the instructions are read as a whole, the law governing the case is correctly stated. The State contends that lack of consent is not an element of forcible rape under SDCL 22-22-1(2), and thus, the jury need not be given a specific instruction as to consent. In citing *State v. Faehnrich*,[6] the State concedes, however, that if the

---

6. In *Faehnrich*, this Court stated that, "consent may be a defense when there is evidence offered and received that the victim did indeed consent; however,

(continued . . .)

victim freely and voluntarily consents without force, coercion, or threat, then consent is a defense to forcible rape. 359 N.W.2d 895, 900 (S.D. 1984).

[¶17.] The instructions given to the jury correctly stated the law applicable in this case. A plain reading of SDCL 22-22-1(2)[7] does not include a consent element. *See State v. Jones*, 2011 S.D. 60, ¶ 12, 804 N.W.2d 409, 413 (quoting *State v. Schnaidt*, 410 N.W.2d 539, 541 (S.D. 1987) ("When the language of a statute is clear, certain, and unambiguous, there is no occasion for construction, and this Court's only function is to declare the meaning as clearly expressed in the statute.")). And, Roach does not present evidence of H.S.'s consent much less any evidence that would "utterly negate" any element of force, coercion, or threat. *Faehnrich*, 359 N.W.2d at 900. At trial, Roach elicited testimony from H.S. on cross-examination that he and H.S. frequently had sexual intercourse in the bathroom in the weeks leading up to the event at issue. H.S. also testified on cross-examination that at least one of the incidences of sexual intercourse included acts of simulated violence. This evidence, however, does not "utterly negate" any element of force, coercion, or threat in this case. H.S. received injuries from the encounter,

_____

(. . . continued)
that evidence would also have to utterly negate any element of force, coercion, or threat." 359 N.W.2d at 900.

7. SDCL 22-22-1(2) provides:

> Rape is an act of sexual penetration accomplished with any person under any of the following circumstances:
>  . . .
> (2) Through the use of force, coercion, or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution[.]

which were documented by medical professionals. H.S. also testified as to the nonconsensual nature of her sexual encounter with Roach. Thus, an instruction specifically containing the word "consent," as proposed by Roach in his second instruction, was not necessary.

[¶18.] Furthermore, the jury instructions, when read as a whole, correctly stated the law applicable to this case and allowed Roach "a meaningful opportunity to present a complete defense." *Klaudt,* 2009 S.D. 71, ¶ 13, 772 N.W.2d at 121. Following rejection of Roach's instruction number two, the trial court gave the jury Roach's proposed "mistake of fact" instruction. In addition to Roach's "mistake of fact" instruction, the jury was also given instructions as to the elements of forcible rape, the presumption of innocence standard, and the reasonable doubt standard. Thus, when read as a whole, the instructions guided the jury to return a verdict of not guilty if the jury had a reasonable doubt as to whether Roach believed H.S. consented to intercourse.

[¶19.] Finally, Roach has failed to articulate any prejudice he suffered as a result of the court's denial of his proposed instruction. Even though Roach's second proposed jury instruction was denied, the court gave Roach's proposed "mistake of fact" instruction. Additionally, Roach was permitted to elicit testimony from H.S. on cross-examination that supported his consent defense. He also argued his consent defense before the jury in his closing argument. Thus, Roach did not suffer any prejudice from the trial court's denial of his proposed jury instruction.

[¶20.] **2. Whether H.S.'s statements to sexual assault nurse, Amber Mason, were admissible under SDCL 19-16-8 (Rule 803(4)).**

[¶21.] Prior to trial, the State filed a notice to offer hearsay evidence of sexual assault nurse, Amber Mason, regarding statements H.S. made to Mason during Mason's examination of H.S. Mason is a registered nurse with specialized training in sexual assault at Rapid City Regional Hospital.

[¶22.] During a motions hearing, the State presented Mason's testimony. Roach objected to the testimony arguing that the testimony was hearsay and not admissible under SDCL 19-16-8 (Rule 803(4)). In a subsequent hearing, the trial court ruled generally that the portions of H.S.'s statements to Mason that were related to diagnosis and treatment were admissible at trial under SDCL 19-16-8 (Rule 803(4)). The trial court, however, did not specify which statements were admissible under SDCL 19-16-8 (Rule 803(4)) and which were not.[8]

[¶23.] At trial, Mason testified about the method she utilizes in the examination of rape victims. Specifically, she stated,

> I do an interview history on them. I basically ask them to tell me everything that happened from beginning to the end; any positions you were in; anything that they said to you; where they touched you; absolutely anything that will help me find any injuries, trauma, anything like that in the exam so they don't

---

8. In its ruling, the trial court noted that,

> there is no indication that the statements of the victim to Nurse Mason were made with the clear understanding that they were for medical treatment or diagnosis. Accordingly, the [c]ourt will not admit the identity information elicited.
>
> . . . The rest of the information elicited by Nurse Mason as it relates to diagnosis and treatment is admissible. . . . [S]o, in essence, the [c]ourt is telling you that the information provided by Nurse Mason relevant to medical diagnosis and treatment is admissible.

have to keep repeating it during the exam for me so I can just kind of know where to look.

[¶24.] Mason further stated that she records the conversation she has with the victim in a "narrative." Mason testified that this narrative serves a medical purpose because it provides guidance to Mason in helping her locate injuries on the victim. Mason testified that she took H.S.'s narrative prior to the physical exam. In quoting H.S.'s narrative, Mason testified,

> [H.S.] told me that she had broke up with her boyfriend and he came into - - over to her house uninvited, that she was in the bathroom and he was wanting to have sex with her. She kept telling him that she didn't want anything. He pulled a blanket off of a shelf and laid it on the floor. She said that she didn't want anything. She just kept saying "No."
>
> And then in the middle of it, she had recalled that she was forced into the bathroom. She didn't walk willingly into the bathroom, and she injured her thumb being forced into the bathroom.
>
> She had also stated that at one point, she just stopped fighting because she just wanted it to get over with. In the middle of it, she grabbed her cell phone. She was pushing buttons and – just random buttons trying to call anybody so that somebody would be able to hear what was going on.

Mason further stated,

> A. Yes. There's an abrasion on her thumb.
> Q. And is that what she - - maybe she told you about on her left thumb?
> A. Yes.
> Q. Okay. Do you recall what [H.S.] told you about how she received all of her injuries?
> A. She told me that she was forced onto the floor where she was fighting for awhile for him to stop. And then she finally just gave up and she was laying on her back on the floor.

Mason also testified that,

Q. I want to – before I move on, I want to ask you, did [H.S.] tell you about penetration?
A. Yes.
Q. And - - and does that serve a medical purpose to find out about whether somebody was penetrated or not?
A. Yes.
Q. And what does penetration mean? Can you explain that?
A. Penetration is just the penis being inserted into the vagina.
Q. And what did [H.S.] tell you about penetration?
A. She told me that he had sex with her. He forced her to have sex with him.

Roach interposed no objection to the foregoing testimony.

[¶25.]      On appeal, Roach argues that some of the statements made by Mason at trial were not relevant for medical diagnosis or treatment, were cumulative to H.S.'s in-court testimony, and thus, were inadmissible hearsay. The State argues that H.S.'s statements to Mason are admissible under SDCL 19-16-8 (Rule 803(4)).

[¶26.]      Admissibility of evidence pursuant to SDCL 19-16-8 (Rule 803(4)) is reviewed under an abuse of discretion standard. *See United States v. Sumner*, 204 F.3d 1182, 1185 (8th Cir. 2000). "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." SDCL 19-16-1(3) (Rule 801(c)); *State v. Shepard*, 2009 S.D. 50, ¶ 14, 768 N.W.2d 162, 166. "Hearsay is not admissible except as provided by law or by chapters 19-9 to 19-18, inclusive, or by other rules prescribed by the Supreme Court." SDCL 19-16-4 (Rule 802). One such exception is SDCL 19-16-8 (Rule 803(4)), which provides:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof are not excluded by § 19-16-4 in so far as reasonably pertinent to diagnosis or treatment, even though the declarant is available as a witness.

"The crucial question under this rule . . . is whether the out-of-court statements were 'reasonably pertinent' to diagnosis or treatment." *Olesen v. Class*, 962 F. Supp. 1556, 1565 (D.S.D. 1997) *aff'd in part, rev'd in part*, 164 F.3d 1096 (8th Cir. 1999).

[¶27.] At the pretrial hearing, the trial court did not make a definitive ruling on the specific portions of Mason's narrative that are now at issue: those statements that were not related to diagnosis and treatment. Upon review, it appears that some portions of Mason's narrative were relevant to medical diagnosis and treatment and some portions were not. The trial court never made a specific pretrial ruling as to admissibility of each portion of the narrative, and Roach did not renew his objection at trial as to the portions of Mason's testimony that were not related to medical diagnosis and treatment. We have said on previous occasions that "[t]he 'failure to object at trial constitutes a waiver of that issue on appeal.'" *State v. Motzko*, 2006 S.D. 13, ¶ 4 n.2, 710 N.W.2d 433, 436 n.2 (quoting *State v. Moran,* 2003 S.D. 14, ¶ 21, 657 N.W.2d 319, 325). Because Roach failed to renew his objection at trial to the portions of Mason's testimony that were not related to medical diagnosis and treatment, he waived this issue. Thus, this Court will not review the issue on appeal.

[¶28.] **3. Whether the trial court erred in denying Roach's *Batson* challenge to the State's peremptory strike of prospective juror, C.B.B.**

[¶29.] During voir dire, Roach's counsel presented questions to the prospective jurors regarding the presumption of innocence. C.B.B., a Native American prospective juror, stated that her understanding of the presumption of

innocence was that the defendant is innocent until proven guilty. In response to counsel's request to elaborate on her affirmative response to the question about whether it would be hard for her to look at Roach as having done nothing wrong, C.B.B. responded, "Seeing him sitting there looking innocent, but you really don't think he did something wrong." After questioning C.B.B. about her responses to Roach's counsel's questions, the State exercised one of its peremptory strikes on C.B.B.

[¶30.] Roach raised a *Batson* challenge to the State's peremptory strike of C.B.B. *See Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Based on C.B.B.'s responses to its inquiries, the State responded that it did not believe that C.B.B. could be a fair and impartial juror. In relying on its detailed notes and observations of the proceedings, the trial court ruled that, based on C.B.B.'s confused responses to both counsel as to the standards for a criminal trial and C.B.B.'s demeanor throughout the proceedings, the State presented race-neutral reasons for the strike.

[¶31.] On appeal, Roach argues the State failed to articulate a race-neutral explanation for striking C.B.B., and therefore, Roach's conviction should be vacated. Specifically, he asserts that the State struck C.B.B. and, yet, chose to retain another juror, R.W., who incorporated C.B.B.'s response as to the meaning of presumption of innocence in his response to counsel's voir dire questions.

[¶32.] This Court reviews a trial court's ruling on a *Batson* challenge for clear error. *State v. Mulligan*, 2007 S.D. 67, ¶ 34, 736 N.W.2d 808, 820 (citing *Batson*, 476 U.S. at 98 n.21, 106 S. Ct. at 1724 n.21). Additionally,

> [t]his [C]ourt's function under the clearly erroneous standard is to determine whether the decision of the lower court lacks the support of substantial evidence, evolves from an erroneous view of the applicable law or whether, considering the entire record, we are left with a definite and firm conviction that a mistake has been made.

*State v. Overbey*, 2010 S.D. 78, ¶ 11, 790 N.W.2d 35, 40 (quoting *In re H.L.S.*, 2009 S.D. 92, ¶ 11, 774 N.W.2d 803, 807-08).

[¶33.] The test for examining a *Batson* challenge consists of three steps. "[A] defendant must first establish a prima facie case of purposeful discrimination by showing he or she is a member of a cognizable racial group and the State used its peremptory challenges to remove members of the defendant's race from the potential jury candidates." *Mulligan*, 2007 S.D. 67, ¶ 33, 736 N.W.2d at 820 (quoting *State v. Owen*, 2007 S.D. 21, ¶ 45, 729 N.W.2d 356, 369). "A criminal defendant may object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race." *Id.* (quoting *Honomichl v. Leapley*, 498 N.W.2d 636, 639 (S.D. 1993)). "The burden then shifts to the State to provide a race-neutral explanation for the use of its peremptory challenges." *Id.* (quoting *Owen*, 2007 S.D. 21, ¶ 45, 729 N.W.2d at 369). "The trial court will then have the duty to determine if the defendant has established purposeful discrimination." *Id.* (quoting *State v. Farmer*, 407 N.W.2d 821, 823 (S.D. 1987)).

[¶34.] In this case, the trial court found that the State articulated a race-neutral explanation for the use of its peremptory challenge. The court based this finding on its observations of C.B.B.'s confusion in her responses as to the standards in criminal trials and her demeanor throughout the proceedings. We acknowledge

that the trial court is in a better position to judge the credibility of C.B.B. This Court will give great deference to the trial court's finding that the State exercised a race-neutral strike. *See id.* ¶ 34 (quoting *Batson*, 476 U.S. at 98 n.21, 106 S. Ct. at 1724 n.21 ("[T]he trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, therefore a reviewing court ordinarily should give those findings great deference")). Thus, because the trial court was in the best position to judge C.B.B.'s credibility and demeanor throughout the proceedings, the finding of the trial court that the strike was a race-neutral strike is affirmed.

[¶35.]     **4.     Whether H.S.'s statements to Officer Terviel were admissible under SDCL 19-16-6 (Rule 803(2)).**

[¶36.]     At trial and prior to H.S. taking the stand, Officer Terviel testified on behalf of the State. Officer Terviel responded to N.R.'s 911 call on February 7, 2011. He testified as to his observations of H.S. When Officer Terviel began to testify as to his conversation with H.S. regarding what had happened, Roach objected to this testimony arguing that it was hearsay. His objection was overruled without explanation. The following day at trial, the State supplemented the record and stated that the testimony of Officer Terviel was admissible under the excited utterance exception to the hearsay rule under SDCL 19-16-6 (Rule 803(2)).[9] Following this exchange, the court did not make any findings on the record

---

9.     SDCL 19-16-6 (Rule 803(2)) provides:

> A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition, is not excluded by § 19-16-4, even though the declarant is available as a witness.

regarding the admission of Officer Terviel's testimony under SDCL 19-16-6 (Rule 803(2)). On appeal, Roach, relying on *State v. Orelup*, argues that the trial court erred when it admitted Officer Terviel's testimony under SDCL 19-16-6 (Rule 803(2)) yet did not make any findings on the record. *See* 492 N.W.2d 101, 106 (S.D. 1992) (finding that the trial court erred by admitting the testimony of two witnesses under SDCL 19-16-6 (Rule 803(2)) when the record did not indicate that the court found that the victim's statements were related to a startling event and made under the stress of excitement).

[¶37.] This Court reviews evidentiary rulings of the trial court under an abuse of discretion standard. *State v. Graham*, 2012 S.D. 42, ¶ 16, 815 N.W.2d 293, 301. "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *State v. Fisher*, 2011 S.D. 74, ¶ 32, 805 N.W.2d 571, 578 (quoting *State v. Krebs*, 2006 S.D. 43, ¶ 26, 714 N.W.2d 91, 101).

[¶38.] To be admissible pursuant to the excited utterance exception to the hearsay rule, a hearsay statement must "relate 'to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.'" *State v. Midgett*, 2004 S.D. 57, ¶ 31, 680 N.W.2d 288, 295 (quoting SDCL 19-16-6 (Rule 803(2)). "The reliability of the statement stems from the influence of the event that overrides any reflective capability essential for fabrication." *State v. Floody*, 481 N.W.2d 242, 250 (S.D. 1992). "Thus, 'the critical inquiry is whether the statements were made while the declarant was still under the influence of the experience.'" *Id.* (quoting *State v. Logue*, 372 N.W.2d 151, 159

(S.D. 1985)).  "The lapse of time between the startling event and the out-of-court statement although relevant is not dispositive in the application of [R]ule 803(2)." *United States v. Iron Shell*, 633 F.2d 77, 85 (8th Cir. 1980).

[¶39.]     The State has cited the record in support of the trial court's admission of Officer Terviel's testimony under SDCL 19-16-6 (Rule 803(2)).  The trial court, however, did not make findings as to whether the statements at issue were made under the stress of excitement of the event.

[¶40.]     In *Midgett*, we said,

> [t]he problem here is that the trial court did not determine whether each statement at issue was made under the stress of excitement caused by this event.  Although the State argues that [the officer] indicated [that the victim] "seemed to— appeared to be shaken," he also testified that she "just seemed hesitant about coming over to talk to me.  She just kind a stayed back."  Therefore, while [the victim] may have been under the requisite stress of excitement when she made some of the statements to [the officer], we cannot, from the State's limited citation to the record, make that assessment for all the statements.

2004 S.D. 57, ¶ 31, 680 N.W.2d at 295.  Similar to the trial court in *Midgett,* the trial court in the present case did not determine whether each statement at issue was made under the stress of excitement of the event.  However, unlike *Midgett*, the State has cited to stress of excitement evidence within the record.  Officer Terviel, who arrived at H.S.'s apartment at 11:09 a.m. – 39 minutes after the forcible encounter occurred and three or four minutes after he received notice from dispatch of the incident, testified that he observed that H.S. "appeared to have been recently crying" and was "visibly upset."  He also noted that H.S. was holding her abdomen area.  Officer Terviel further testified that, while he was speaking to N.R., he "could

hear [H.S.] crying." When Officer Terviel began to question H.S. about the alleged rape, H.S. "appeared to be visibly shaken, alternate - - alternately crying, sobbing, and appeared quite upset." Specifically, Officer Terviel testified that

> A. [s]he - - she told me that she continually told [Roach] no, but he told her he just wanted to have sex with her one more time.
> Q. Did she break down at any point during this conversation?
> A. Yes sir. Again, she - - she would cry on and off throughout the conversation.

Officer Terviel's investigation involving H.S. lasted approximately 49 minutes.[10]

[¶41.] Officer Terviel's observations and H.S.'s demeanor throughout Officer Terviel's investigation indicate that H.S.'s excited statements were the product of the startling event she was continuing to experience at the time she spoke with Officer Terviel rather than the product of reflection. While the trial court did not make findings as to the stress of excitement of the event on the record as discussed in *Orelup*, the State has cited stress of excitement evidence in the record to warrant the trial court's admission of Officer Terviel's testimony under the excited utterance exception to the hearsay rule. Therefore, the trial court was within its discretion to admit the testimony of Officer Terviel under SDCL 19-16-6 (Rule 803(2)).

[¶42.] **5. Whether the trial court abused its discretion in allowing the use of the word "rape" during trial.**

[¶43.] Finally, Roach contends that the trial court abused its discretion in overruling his two objections and allowing the use of the word "rape" during the trial. He argues that he was prejudiced by its use. Roach further asserts that the use of the term was a legal conclusion which invaded the province of the jury.

---

10. Following the investigation, H.S. was taken to Rapid City Regional Hospital– a 10 minute commute. H.S. was seen by medical professionals at 12:07 p.m.

Additionally, he contends that the trial court suggested that it would instruct the jury as to the use of the word "rape" at trial, but a specific instruction was never given. This Court reviews the trial court's denial of Roach's objection to the use of the word "rape" at trial under an abuse of discretion standard. *See State v. Mattson*, 2005 S.D. 71, ¶ 13, 698 N.W.2d 538 ("[This Court] presume[s] the evidentiary rulings made by a trial court are correct, and review[s] those rulings under an abuse of discretion standard.").

[¶44.]      This is the first time this Court has addressed whether allowing the use of the word "rape" throughout trial is an abuse of discretion. Other jurisdictions have had the opportunity to address this issue. *See State v. Goss*, 235 S.E.2d 844, 849 (N.C. 1977) (finding that the use of the term "rape" by the victim was clearly a "convenient shorthand term" and not an impermissible legal conclusion); *State v. Wonser*, 537 P.2d 197, 199 (Kan. 1975) (finding that the trial court did not err in allowing the repeated use of the word "rape" by witnesses, the prosecuting attorney, and defense counsel when referring to an element of the offense of indecent liberties with a child and stating that "the parties were simply designating the act by its common name"); *State v. Amick*, No. COA8-760, 2009 WL 1056557, at *3 (N.C. Ct. App. Apr. 21, 2009) (stating that the victim's use of the word "rape" was not an impermissible legal conclusion, but rather "a 'convenient shorthand term' to describe the victim's version of events"); *People v. Haynes*, No. A122908, 2010 WL 4132618, *6-7 (Cal. Dist. Ct. App. Oct. 21, 2010) (stating that it was not an abuse of discretion for the court to allow the prosecutor to ask the victim questions using the word "rape" and for the victim to use the word "rape" in response because victim's

responses were shorthand for describing what had occurred). *See also State v. Mireles*, No. A03-699, 2004 WL 1244077, *4 (Minn. Ct. App. June 8, 2004) (finding that there was no prosecutorial misconduct in the prosecution's use of the word "rape" to describe the offense). *But see Arnold v. State*, 304 S.E.2d 118, 123 (Ga. Ct. App. 1983) (stating that in this case, which turned on the identity of the assailant rather than on whether the rape occurred, the "[u]nrestricted use of the word ["rape"] may be objectionable, absent some jury instruction that the question of whether or not any rape occurred was for [the jury's] determination").

[¶45.]     On a review of the record, the words "rape" or "raped" are used by both parties in voir dire, direct and cross-examination of witnesses, and closing arguments. Prior to Roach's first objection, "rape" or "raped" was used several times by both the State and Roach. Notably, even after his second objection, Roach used "rape" or "raped" in his cross-examination of H.S. and his closing argument. The prevalence of the use of the word "rape" by both sides lends credence to fact that the word "rape" was not used as a legal conclusion, but rather as shorthand to describe the events that occurred.

[¶46.]     Further, while the court did not give a specific jury instruction as to the use of the words "rape" or "raped," the court did give specific instructions as to the elements of forcible rape under SDCL 22-22-1(2) that must be proven beyond a reasonable doubt, the definition of reasonable doubt, and the presumption of innocence. Roach did not suffer prejudice because the jury was properly instructed, thus avoiding confusion, if any, that the use of the word "rape" may have caused.

Therefore, the court did not abuse its discretion in denying Roach's objection to the use of the word "rape" during trial.

## CONCLUSION

[¶47.]     The trial court properly denied Roach's proposed jury instruction on consent. The instructions that were given to the jury accurately stated the law and were not prejudicial to Roach. Additionally, because Roach did not object to Mason's testimony at trial, he failed to preserve that issue on appeal. The trial court also correctly denied Roach's *Batson* challenge to the State's peremptory strike of juror, C.B.B. Further, while the trial court did not make specific findings on the record, the State has cited to stress of excitement evidence in the record to warrant the trial court's admission of Officer Terviel's testimony under the excited utterance exception to the hearsay rule. Lastly, the trial court did not abuse its discretion in denying Roach's objection to the use of the word "rape" during trial. Therefore, based on the foregoing, we affirm.

[¶48.]     GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, concur.

[¶49.]     KONENKAMP, Justice, concurs specially.


KONENKAMP, Justice (concurring specially).

[¶50.]     This case illustrates one of the pitfalls inherent in our rule in SDCL 19-9-3 (Rule 103(a)). The rule provides in part: "Once the court makes a *definitive ruling* on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for

appeal." SDCL 19-9-3 (Rule 103(a)) (emphasis added); *see also Papke v. Harbert*, 2007 S.D. 87, ¶ 54 n.16, 738 N.W.2d 510, 528 n.16. Our rule gives no further guidance on what constitutes a "definitive ruling." Overreliance on this provision may be hazardous to preserving an objection for appeal.

[¶51.] Here, the defense sought a pretrial order to exclude, among other things, the testimony of Nurse Amber Mason about statements the victim made regarding the identity of the alleged assailant and other remarks not pertinent to medical diagnosis. The court granted the request, in part, saying it "will not admit the identity information elicited." Defense counsel also asked the court for "clarification on the purported statements the State is seeking to introduce, as not all statements of the alleged victim supposedly made to Ms. Mason are pertinent to medical diagnosis or treatment." The court responded:

> The court finds that the rest of . . . the information elicited by Nurse Mason as it relates to diagnosis and treatment is admissible. Now I note in your response, [defense counsel], that you are asking for clarification regarding what statements the victim made to the nurse as pertinent to medical diagnosis or treatment so, in essence, the court is telling you that the information provided to Nurse Mason relevant to medical diagnosis and treatment is admissible. The identity question the court finds to be inadmissible.

Then the court asked counsel if its response provided "sufficient direction." The State answered affirmatively, and defense counsel replied, "We do rely on our letter dated August 12th." But that letter, again, only sought the same "clarification" and commented that "not all statements the alleged victim supposedly made to Ms. Mason are pertinent to medical diagnosis or treatment."

[¶52.]    Was there a definitive ruling?  In fairness to defense counsel, in a sense the ruling was definitive: it was not conditional or provisional.  Apparently, the trial court intended its ruling to be its final word on the subject.  But was the court saying that all the nurse's testimony, except on identity, was pertinent to medical diagnosis or treatment?  Or was the court saying that it would admit the nurse's testimony pertaining only to medical diagnosis or treatment?  These are close questions.  As explained in the Committee Notes to the federal counterpart to SDCL 19-9-3 (Rule 103(a)), the rule "imposes the obligation on counsel to clarify whether an *in limine* or other evidentiary ruling is definitive when there is doubt on that point."  *See* Fed. R. Evid. 103(a) advisory committee's note.

[¶53.]    On appeal, counsel thoroughly parses Nurse Mason's testimony, arguing that portions were not at all related to diagnosis or treatment.  But the trial court was never given the opportunity to hear these specific objections.  If it had, the matter may have been easily corrected.  Defense counsel should have brought this issue back to the court's attention at trial.  As the Committee Notes explain, "Even where the court's ruling is definitive, nothing in the [rule] prohibits the court from revisiting its decision when the evidence is to be offered."  *Id.*  Since the court was not given an opportunity to rule on the specific concerns now before us, we must declare the issue waived.