#28250, #28251-a-GAS
**2018 S.D. 34**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

     v.

JOHN ABDO, JR.,                           Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
CHARLES MIX COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE BRUCE V. ANDERSON
Judge

* * * *

KEITH GOEHRING
Parkston, South Dakota                    Attorney for defendant
                                          and appellant.


MARTY J. JACKLEY
Attorney General

CULLEN P. MCNEECE
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.


* * * *

CONSIDERED ON BRIEFS
ON MARCH 19, 2018
OPINION FILED **04/25/18**

SEVERSON, Justice

[¶1.]    In this consolidated appeal following separate convictions and sentences for aggravated assault and escape, John Abdo asserts multiple issues for our review.  He challenges the circuit court's denial of the motion to suppress filed in each case.  Abdo further claims the circuit court erred when it denied him a new trial after the jury found him guilty of aggravated assault and guilty of the lesser-included offense of simple assault.  Additionally, Abdo asserts the circuit court abused its discretion in certain evidentiary rulings and that the evidence is insufficient to support the jury's verdict.  We affirm.

## Background

[¶2.]    On the evening of January 7, 2016, Roseanne Weddell, Winston Houseman, John Abdo, Philomene Boneshirt, and Hazen Winckler were watching television together in a home owned by Shelly Selwyn in Wagner, South Dakota.  Roseanne is Shelly's daughter.  Shelly did not live in the home but allowed Roseanne and Roseanne's now-husband Winston to live there.  Winston later testified that Abdo (Winston's nephew) also stayed at the home from time to time and had been staying there during the two weeks preceding January 7, 2016.  Philomene was Abdo's girlfriend.  Hazen was an acquaintance.

[¶3.]    Around midnight on January 7, after Abdo, Winston, Philomene, and Hazen had collectively consumed at least a half-gallon of vodka, the group went outside to smoke.  Roseanne was not drinking and did not join the group outside; she had retired to her bedroom.  When Abdo, Winston, Philomene, and Hazen finished smoking and came back inside Abdo and Philomene went to Abdo's

bedroom located in the northwest corner of the home. A curtain separated the bedroom from the living room. Winston testified that around five or ten minutes after Abdo and Philomene retreated to the bedroom, he saw Hazen leave the home. Shortly thereafter, Winston went to the bedroom he and Roseanne shared.

[¶4.] Winston testified that 20 or 30 minutes after he went to his bedroom, he heard hollering. He went to the living room to investigate, but by the time he got there, the hollering had stopped. Winston returned to his bedroom. Shortly thereafter, Winston heard crying and screaming. He testified that he heard Philomene say, "Stop biting me!" When Winston went to investigate, he found that Philomene was in the bathroom screaming. The door to the bathroom was closed. Winston saw Abdo asleep or passed out on the floor in the bedroom adjacent to the bathroom. Winston did not want to barge into the bathroom in case Philomene was indisposed, so he asked Roseanne to check on Philomene. Roseanne found Philomene bloody with an injury to her nose and with bite marks on her body.

[¶5.] Roseanne and Winston took Philomene to the Indian Health Service hospital in Wagner, South Dakota. Hospital staff called law enforcement to investigate. Wagner Police Officer Shane Larson spoke with Winston. Winston relayed the sequence of events to Officer Larson. Officer Larson determined that Abdo was a suspect. Winston also informed Officer Larson that he and Roseanne lived in the home and that Abdo was passed out in one of the bedrooms. Winston gave Officer Larson permission to enter the home. Winston also signed a written statement consenting to law enforcement's entry into the home to remove Abdo.

[¶6.]    After obtaining Winston's consent, Officer Larson, Officer Brian McGuire, and Charles Mix County Deputy Sheriff Derik Rolston entered the home to look for Abdo. They found him passed out on the bedroom floor. The officers had a difficult time waking Abdo. The officers did not observe scratches or marks on Abdo. However, the officers observed that Abdo had blood around his mouth and on his hands. The officers arrested Abdo.

[¶7.]    Back at the hospital in Wagner, staff bandaged Philomene. She was transferred to Sanford Hospital in Sioux Falls, South Dakota for surgery. Once at Sanford Hospital, Dr. Bradley Coots, a board certified plastic surgeon, examined and spoke with Philomene. As he and his staff prepped her for surgery, Dr. Coots observed that the tip of Philomene's nose had been cut, torn, or bitten off. He also noticed multiple abrasions on her body. Dr. Coots asked Philomene how the injuries had occurred. She replied that her boyfriend bit her. During surgery, Dr. Coots successfully reattached the tip of Philomene's nose.

[¶8.]    A grand jury issued an indictment charging Abdo with aggravated assault (domestic) in violation of SDCL 22-18-1.1(4) and SDCL 25-10-1. The State filed a part II information alleging Abdo to be a habitual offender. While incarcerated, Abdo obtained a furlough to attend a job interview. Once released on furlough, Abdo did not return. Thereafter and in a separate criminal file, a grand jury indicted Abdo for second-degree escape in violation of SDCL 22-11A-2.1. The State again filed a part II information alleging Abdo to be a habitual offender.

[¶9.]    Abdo filed a motion to suppress in both files. He asserted that law enforcement's entry into his bedroom in the residence without a warrant violated

his rights under the Fourth Amendment, requiring suppression of all the evidence gathered against him including the evidence related to the escape charge. After a hearing and after considering post-hearing briefing, the circuit court issued a memorandum decision denying Abdo's motion.

[¶10.]     A jury trial began on February 13, 2017. The parties stipulated to having Dr. Coots's deposition testimony read to the jury. During the deposition, Abdo objected when Dr. Coots testified that Philomene told him that "she was bit by her - - her boyfriend." During the trial, Abdo renewed the objection, asserting that the statement was inadmissible hearsay. The State responded that the statement was admissible under SDCL 19-19-803(4) because it was made for purposes of a medical diagnosis. The circuit court overruled the objection, ruling the statement admissible under SDCL 19-19-803(4).

[¶11.]     At the close of the State's case, Abdo moved for a judgment of acquittal. The court denied the motion. During the settling of jury instructions, the court accepted Abdo's proposed instructions on the lesser-included offense of simple assault. After deliberating, the jury found Abdo guilty of aggravated assault (domestic) and simple assault (domestic). Abdo moved for a mistrial because the jury improperly found him guilty of both the charged offense and the lesser-included offense. In particular, Abdo asserted that the instructions informed the jury that it could not find him guilty of simple assault unless it found him not guilty of aggravated assault. Because the jury found him guilty of both offenses, Abdo averred the jury did not follow the instructions. The court requested briefing and,

thereafter, denied Abdo's motion. The court concluded that the guilty verdict on the charge of simple assault (domestic) was "essentially a nullity."

[¶12.]   On February 16, 2017, the circuit court held separate trials on the charge of second-degree escape and on the part II information. The court found Abdo guilty of second-degree escape and not guilty of the part II. The court sentenced Abdo to fifteen years in prison on the aggravated assault (domestic) conviction, with eight years suspended and credit for 384 days served. The court sentenced Abdo to five years in prison on the second-degree escape conviction, with four and one-half years suspended. The court ordered the sentences to run consecutive to one another and entered a judgment of conviction in each file.

[¶13.]   Abdo appeals, asserting the following issues:

1.  The circuit court erred in denying the motions to suppress.

2.  The circuit court erred in denying the motion for a new trial.

3.  The circuit court abused its discretion when it denied the motion for a judgment of acquittal.

4.  The circuit court abused its discretion when it admitted into evidence inflammatory and prejudicial pictures.

5.  The circuit court abused its discretion when it admitted a statement made by the victim to the surgeon identifying Abdo as the perpetrator.

**Standard of Review**

[¶14.]   We review a denial of a motion to suppress de novo. *State v. Thunder*, 2010 S.D. 3, ¶ 11, 777 N.W.2d 373, 377. Likewise, we review a challenge to the sufficiency of the evidence de novo. *State v. Bausch*, 2017 S.D. 1, ¶ 25, 889 N.W.2d 404, 411. However, we review the circuit court's factual findings for clear error.

*Thunder*, 2010 S.D. 3, ¶ 11, 777 N.W.2d at 377.  Evidentiary rulings are reviewed for an abuse of discretion.  *State v. Vargas*, 2015 S.D. 72, ¶ 19, 869 N.W.2d 150, 158.

## Analysis

### 1. Motions to Suppress

[¶15.]      Abdo argues that law enforcement was required to obtain a warrant before entering the home and seizing him.  He asserts that he "had very significant connections to the said house."  Specifically, Abdo emphasizes that he had been staying there for approximately two weeks prior to January 7, had stayed there on and off for some time, had kept his personal belongings there, and had his own bedroom with a curtain separating the bedroom from the living room.

[¶16.]      "The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects."  *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S. Ct. 2793, 2797, 111 L. Ed. 2d 148 (1990).  "The prohibition does not apply, however, to situations in which voluntary consent has been obtained[.]"  *Id.*  "Consent to search a premises can be obtained from either an owner or a third party with common authority over the premises."  *State v. Runge*, 2006 S.D. 111, ¶ 13, 725 N.W.2d 589, 592 (emphasis omitted).  It is undisputed that Winston does not own the home.  But the circuit court found that Winston and Roseanne had permission to occupy the home.  Thus, Winston had at least "mutual use of the property" and generally had "joint access or control for most purposes[.]"  *See United States v. Matlock*, 415 U.S. 164, 171 n.7, 94 S. Ct. 988, 993 n.7, 39 L. Ed. 2d 242 (1974); *accord Rodriguez*, 497 U.S. at 181-82, 110 S. Ct. at 2798.

[¶17.]    Abdo, however, asserts that Winston did not have authority to consent to law enforcement's search of *Abdo's bedroom*. Abdo likens his status in the bedroom to that of a tenant in an apartment. He emphasizes that he gave Winston and Roseanne money when he stayed there and regularly helped with purchasing groceries. He further claims that he had exclusive control of his bedroom and bathroom areas of the home, as evidenced by the sheet that separated the bedroom from the living room.

[¶18.]    In denying Abdo's motion to suppress, the circuit court made multiple findings relevant to Abdo's status in the home. From Winston's testimony, which the court found "somewhat confusing," the court concluded that "Abdo was not a resident of the home in question. He was an occasional visitor or overnight guest." The court recognized that "[a] guest in a residence who shares use and access of the premises is subject to third-party consent of his host and such third-party consent is sufficient to constitute a valid search under the Fourth Amendment." According to the court, "Winston clearly had authority to grant permission to the officers to enter his home and remove Abdo." The court further found that "[l]aw enforcement had no knowledge at the time if any other person had an interest in the home and their belief that Winston could give them consent to enter the home to arrest Mr. Abdo was a reasonable one."

[¶19.]    Although we review a denial of a motion to suppress de novo, we will not overturn the circuit court's factual findings unless they are clearly erroneous. *Thunder*, 2010 S.D. 3, ¶ 11, 777 N.W.2d at 377. From our review of the court's findings, Abdo has not established clear error. The record supports that Winston

had authority to consent, that the officers reasonably believed Winston had authority to consent, and that Abdo was an overnight guest. Because Winston had common authority over and joint access to the home, including the room in which Abdo was located, the circuit court did not err when it denied Abdo's motion to suppress. Because we affirm the circuit court's denial of Abdo's motion to suppress, we need not consider whether the circuit court should have suppressed the evidence related to the escape charge.

### 2. New Trial

[¶20.] After the jury returned its verdict, Abdo moved for a mistrial, arguing that the jury failed to follow the court's instructions. He claims that the instructions "plainly informed the jury that it could not find [him] guilty of both Aggravated Assault and Simple Assault." Abdo emphasizes that this issue does not involve an inconsistent jury verdict. Rather, according to Abdo, the jury disregarded the law, and by dismissing the guilty verdict for simple assault, the circuit court improperly attempted to guess the jury's intended verdict.

[¶21.] We begin with a review of the court's instructions. Instruction 17 informed the jury that if it found the evidence "insufficient to establish beyond a reasonable doubt that the defendant is guilty of the crime charged," it "must go on to consider if the defendant is guilty of an offense necessarily included in the offense charged[.]" Similarly, Instruction 33 informed the jury:

> If under the court's instructions and the evidence you find
> beyond a reasonable doubt that the defendant committed the
> acts constituting the elements of the offense charged, then it is
> your duty to find the defendant guilty. If you do not find the
> defendant guilty of the offense charged but find beyond a
> reasonable doubt that the defendant is guilty of a lesser and

included offense of the offense charged, it is your duty to find the defendant guilty of the included offense.

The court's instructions also set forth the elements necessary for a guilty verdict for aggravated assault and for simple assault.

[¶22.]     Although the jury instructions use "if" and "then" language, the verdict form does not likewise contain qualifying language. The verdict form lists the offenses and asks the jury to "place an 'X' on the line representing your verdict" as it relates to: (1) the charge of aggravated assault – domestic abuse, (2) the charge of aggravated assault – non-domestic abuse, (3) the lesser included offense of simple assault – domestic abuse, and (4) as to the lesser included offense of simple assault – non-domestic abuse. Following the directive on the verdict form, the jury placed an "X" on the line to reflect a guilty or not guilty verdict as to each offense on the list. The jury found Abdo guilty for both aggravated assault and simple assault. After the verdict was read in open court, the circuit court polled the jurors individually to confirm that each juror agreed with the guilty verdict both as to aggravated assault and simple assault.

[¶23.]     As the Eighth Circuit Court of Appeals has stated, "[w]hile the jury did not follow the court's instructions, a finding of guilty on the lesser offenses as well as on the major offenses creates per se no inconsistency in conclusions[.]" *United States v. Howard*, 507 F.2d 559, 563 (8th Cir. 1974). This is because "in finding the defendant guilty of the major offenses the jury must necessarily have concluded that all of the elements of the lesser included offenses were present." *Id.* However, when "a defendant is convicted of both a greater and lesser included offense, the conviction and sentence on the lesser charge must be vacated." *See United States v.*

*Belt*, 516 F.2d 873, 875 (8th Cir. 1975) (citing *Howard*, 507 F.2d 559; *United States v. Lewis*, 482 F.2d 632, 647 (D.C. Cir. 1973)).  Because, here, the circuit court vacated the jury's guilty verdict for simple assault, the court properly denied Abdo's request that the court declare a mistrial.

### 3.  Judgment of Acquittal

[¶24.]    Abdo contends that the jury's verdict was based upon mere suspicion or possibility of guilt and not "hard evidence."  He highlights that the State did not present eyewitness testimony or DNA evidence.  He further emphasizes that Philomene testified that she did not remember who caused her injuries while the other witnesses testified that Abdo was passed out and that it was difficult to wake him.

[¶25.]    We recently explained that when reviewing a challenge to the sufficiency of the evidence, we "accept the evidence, and the most favorable inference fairly drawn therefrom, which will support the verdict." *State v. Hemminger*, 2017 S.D. 77, ¶ 40, 904 N.W.2d 746, 759 (quoting *State v. Buchholz*, 1999 S.D. 110, ¶ 33, 598 N.W.2d 899, 905).  Similar to the defendant's claim in *Hemminger*, Abdo "presents the evidence in a light most *unfavorable* to the verdict." *See id.*  But we will not set aside a verdict "[i]f the evidence, including the circumstantial evidence and reasonable inferences drawn therefrom, sustains a reasonable theory of guilt." *State v. Beck*, 2010 S.D. 52, ¶ 7, 785 N.W.2d 288, 292.  Moreover, we "will not resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh evidence." *Buchholz*, 1999 S.D. 110, ¶ 33, 598 N.W.2d at 905 (quoting *State v. Knecht*, 1997 S.D. 53, ¶ 22, 563 N.W.2d 413, 421).  Based on our

review of the record, the evidence if believed by the jury supports the finding of guilt beyond a reasonable doubt. The circuit court did not err when it denied Abdo's motion for a judgment of acquittal.

### 4. Admission of Photographs

[¶26.] Over Abdo's objection, the circuit court admitted into evidence multiple graphic photographs of Philomene's injuries—exhibits 1 through 7 and 11 through 15. Abdo claims that the photographs were inflammatory, prejudicial, and unnecessary. He further argues that the witnesses who saw Philomene's "injuries surely could have adequately testified about what they saw" and "[v]erbal descriptions" could have sufficiently conveyed to the jury the nature and extent of Philomene's injuries.

[¶27.] "It is well settled that photographs are generally admissible where they accurately portray anything that a witness may describe in words. They are also admissible when they are helpful in clarifying a verbal description of objects and conditions." *State v. Owens*, 2002 S.D. 42, ¶ 89, 643 N.W.2d 735, 756-57. However, to be admitted, the photographs must be relevant to a material issue. *Id.* As we stated in *Owens*, "[i]f relevant, photographs are not rendered inadmissible merely because they incidentally tend to arouse passion or prejudice." *Id.*; *accord State v. Hart*, 1998 S.D. 93, ¶¶ 21, 23, 584 N.W.2d 863, 867. The evidence becomes inadmissible when its "probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." SDCL 19-19-403. "It is important to

remember, however, that because virtually all relevant evidence presented at trial is harmful to the other party, this is not what is meant by unfair prejudice." *Supreme Pork, Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 30, 764 N.W.2d 474, 484. Unfair prejudice means "evidence that has the capacity to persuade by illegitimate means." *Knecht*, 1997 S.D. 53, ¶ 12, 563 N.W.2d at 419 (quoting *State v. Brings Plenty*, 459 N.W.2d 390, 399 (S.D. 1990)). We also consider that "[t]he State has "the right to present its case in any manner it sees fit so long as it stays within evidentiary rules[.]" *State v. Herrmann*, 2004 S.D. 53, ¶ 12, 679 N.W.2d 503, 507.

[¶28.]    Here, the circuit court determined that, although grotesque, the photographs were relevant to prove serious bodily injury and that Abdo acted with the requisite intent. The photographs were admitted through the testimony of two officers and Dr. Coots. The two officers testified to having taken certain photographs, and Dr. Coots testified in regard to photographs taken at the hospital. Dr. Coots specifically referred to the photographs during his deposition in describing the nature and extent of Philomene's injuries. Because the photographs assisted Dr. Coots in his expert testimony, helped clarify the verbal descriptions of Philomene's injuries, and were relevant to a material issue, the circuit court did not abuse its discretion when it admitted the photographs.

### 5. Statements by Philomene Identifying Abdo

[¶29.]    Dr. Coots testified in his deposition that he had asked Philomene how she obtained her injuries, and "[f]rom [his] recollection, she said that she was bit by her - - by her boyfriend." The circuit court admitted Dr. Coots's statement as a statement made for and reasonably pertinent to a medical diagnosis under

SDCL 19-19-803(4). Abdo claims the circuit court abused its discretion when it allowed Dr. Coots's testimony because Dr. Coots did not need to know the identity of the perpetrator to diagnosis or treat Philomene.

[¶30.]     Hearsay is generally inadmissible subject to certain exceptions. SDCL 19-19-802. This issue concerns an exception made for a "[s]tatement made for medical diagnosis or treatment." SDCL 19-19-803(4). The statement must be one that: "(A) Is made for - - and is reasonably pertinent to - - medical diagnosis or treatment; and (B) Describes medical history; past or present symptoms or sensations; their inception; or their general cause." *Id.* In *State v. Roach*, we recognized that the critical inquiry is whether the statement was reasonably pertinent to medical diagnosis or treatment. 2012 S.D. 91, ¶ 26, 825 N.W.2d 258, 266; *accord Lovejoy v. United States*, 92 F.3d 628, 632 (8th Cir. 1996); *United States v. Renville*, 779 F.2d 430, 436 (8th Cir. 1985). To answer this question, the Eighth Circuit Court of Appeals has employed a two-part test: "first, the declarant's motive in making the statement must be consistent with the purpose of promoting treatment; and second, the content of the statement must be such as is reasonably relied on by a physician in treatment or diagnosis." *Renville*, 779 F.2d at 436; *accord Lovejoy*, 92 F.3d at 632.

[¶31.]     A review of Philomene's statement to Dr. Coots in context reveals that Philomene's motive in making the statement was to aid in her treatment by Dr. Coots. Moreover, Dr. Coots's question focused on discerning the cause of Philomene's injuries, not the identity of an alleged perpetrator. Indeed, Dr. Coots did not ask Philomene *who* caused her injuries. Philomene identified her boyfriend

on her own. The circuit court did not abuse its discretion when it admitted

Philomene's statement to Dr. Coots.

[¶32.]        Affirmed.

[¶33.]        GILBERTSON, Chief Justice, and ZINTER, KERN, and JENSEN,

Justices, concur.